# EXHIBIT A

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

MURPHY HOFFMAN COMPANY,

<em>Plaintiff,</em>

v.

AMAZON LOGISTICS, INC.

<em>Defendant.</em>

Case No. _____

Division ____

K.S.A. Chapter 60

## PETITION

Plaintiff MHC Financial Services, Inc. ("Plaintiff" or "MHC"), by its attorneys, for its Complaint against Defendant Amazon Logistics, Inc. ("Defendant" or "Amazon Logistics") (collectively referred to as the "Parties"), states as follows:

The Parties and Jurisdiction

1.     MHC is a corporation organized and existing under the laws of the State of Missouri. MHC's principal place of business is Leawood, Kansas.

2.     Amazon Logistics, Inc. is a Delaware corporation, organized and existing under the laws of Delaware with its principal place of business in Seattle, Washington.

3.     Amazon Logistics' is registered to do business in the State of Kansas, is active and in good standing and may be served process via its registered agent Amazon Logistics' Resident Agent, Corporation Service Company, at 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614.

4.     Upon information and belief, Amazon Logistics provides logistics services throughout the United States with services extending into Johnson County, Kansas.

5.     The business activity of Amazon Logistics constitutes substantial, continuous and systematic business within the State of Kansas, including within Johnson County, Kansas.

6.    As such, this Court has jurisdiction over the parties pursuant to K.S.A. § 60-308(b)(2) and K.S.A. § 17-7307(c).

7.    Venue is proper in this court pursuant to K.S.A. 60-604(3).

Facts

8.    MHC is the financial services subsidiary of the Murphy Hoffman Company, Inc., a full service truck dealership network with its principal place of business in Leawood, Kansas.

9.    Trading accounts receivable is common in the trucking industry. MHC engages in this trade, generally known as factoring. Factoring allows a seller to change accounts receivable into money to meet cash flow requirements.

10.   Upon purchasing an account receivable from another company, MHC collects the amount due on the purchased account directly from the account debtor.

11.   Amazon Logistics is a freight brokerage company and hires trucking companies to transport its brokered freight across the country.

12.   In this case, Amazon Logistics hired two trucking companies – M&J Logistics and RSA – to transport its brokered freight. MHC purchased the invoices, also known as account receivables, from M&J and RSA, which reflect the amounts Amazon Logistics owes to M&J and RSA for brokering its freight. MHC now has the right to collect the account receivables directly from Amazon Logistics.

**M&J Logistics**

13.   On a number of occasions, Amazon Logistics hired the over-the-road trucking company Jose Ramos DBA M&J Logistics ("M&J") to transport its freight.

14.   The agreement of Amazon Logistics to pay M&J to transport its freight and the agreement of M&J to transport Amazon Logistics freight for money was a legally binding contract supported by consideration.

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

15.   On May 8, 2019, MHC purchased and M&J agreed to sell and assign its accounts receivable to MHC (the "Factoring Agreement"). The Factoring Agreement included all present and future accounts receivable owed to M&J by Amazon Logistics. A true and correct copy of the factoring agreement is attached and incorporated as **Exhibit A**.

16.   On May 21, 2019, MHC's Account Manager sent Amazon Logistics a "Notice of Assignment" (the "Notice") via email bearing MHC's logo.  The Notice provides M&J

> [H]as assigned all if its current and future accounts receivable and the proceeds thereof to Purchaser. Accordingly, Purchaser now owns ALL of . . . carrier's accounts receivable and has the sole and exclusive right to collect and retain the same. The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. **Please be advised that ALL such invoices (past, present and future) must be paid directly to Purchaser as indicated. . ."**

A true and accurate copy of the Notice is attached and incorporated as **Exhibit B** (emphasis in original).

17.   The Notice also provides "**Payment to the carrier or any other party will not discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.**" Exhibit D (emphasis in original).

18.   The Notice identified the carrier, M&J Logistics, the date of assignment, and payment of instructions. Exhibit B.

19.   After May 21, 2019, the date Amazon Logistics received the Notice, Amazon Logistics could only discharge its obligation to pay the M&J accounts receivable by paying MHC.

20.   Upon information and belief, following receipt of the Notice, Amazon continued to pay M&J directly, rather than MHC as required by the Notice.

**RSA Industries LLC**

21.    Amazon Logistics hired the over-the-road trucking company RSA Industries LLC ("RSA") to transport its freight on a number of occasions.

22.    The agreement of Amazon Logistics to pay RSA to transport its freight and the agreement of RSA to transport Amazon Logistics freight for money was a legally binding contract supported by consideration.

23.    On April 24, 2019, MHC purchased and RSA agreed to sell and assign its accounts receivable to MHC (the "Factoring Agreement"). The Factoring Agreement included all present and future accounts receivable owed to RSA by Amazon Logistics. A true and correct copy of the factoring agreement is attached and incorporated as **Exhibit C**.

24.    The Notice provides RSA

[H]as assigned all if its current and future accounts receivable and the proceeds thereof to Purchaser. Accordingly, Purchaser now owns ALL of . . . carrier's accounts receivable and has the sole and exclusive right to collect and retain the same. The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. **Please be advised that ALL such invoices (past, present and future) must be paid directly to Purchaser as indicated. . ."**

A true and accurate copy of the Notice is attached and incorporated as **Exhibit D** (emphasis in original).

25.    The Notice also provides "**<u>Payment to the carrier or any other party will not discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.</u>**" Exhibit D (emphasis in original).

26.    The Notice identified the carrier, RSA, the date of assignment, and payment of instructions. Exhibit D.

27.   After April 30, 2019, the date Amazon Logistics received the Notice, Amazon Logistics could only discharge its obligation to pay the accounts receivable originally owed to RSA by paying MHC.

28.   Upon information and belief, following receipt of the Notice, Amazon continued to pay RSA directly, rather than MHC as required by the Notice.

**Verification Process**

29.   Before purchasing an Amazon Logistics account receivable from M&J or RSA, MHC verified each account receivable through Amazon Logistics' web portal.

30.   After MHC entered into the Agreements with M&J and RSA to purchase their accounts receivable, MHC set up an account with Amazon Logistics web portal (the "Portal").

31.   Upon information and belief, the Portal is an online resource maintained and controlled by Amazon Logistics that provides users with information regarding accounts receivable including the agreed-upon rate, the details of the shipment and verification of the completion of services.

32.   Upon information and belief, the information contained in the Portal regarding each account receivable is entered and/or approved by Amazon Logistics.

33.   Using the Portal, MHC confirmed each account receivable remaining due and owing by Amazon Logistics and was actually completed by M&J or RSA.

34.   Upon successful verification of the account receivable, MHC would purchase the account receivable from M&J and RSA and collect the full amount from Amazon Logistics, the account debtor.

35.   Using the Portal, MHC successfully verified each account receivable tendered to it by M&J and RSA prior to purchase.

**Factoring for M&J**

36.   MHC first factored an Amazon Logistics load for M&J on May 21, 2019.

37.   Each time M&J sent MHC an Amazon Logistics an account receivable to purchase, MHC logged in to the Portal, using the process described above, to verify it was actually due and payable by the account debtor, Amazon Logistics.

38.   Amazon Logistics first remitted payment directly to MHC for M&J accounts on May 24, 2019.

39.   Since that time, Amazon Logistics has failed to pay MHC for some of the transportation services of M&J pursuant to the Factoring Agreement or otherwise. True and correct copies of the unpaid invoices are attached and incorporated as **Exhibit E**.

40.   M&J fully performed under its agreement with Amazon Logistics as to the invoices by transporting Amazon Logistics' freight, and Amazon Logistics' failure to pay MHC for the transportation of its freight by M&J constitutes a breach of contract.

41.   Around July 29, 2019, MHC sent a letter to Amazon Logistics. The letter stated Amazon Logistics was in default on its account and demanded payment, and is attached and incorporated as **Exhibit F.**

42.   On August 7, 2019, MHC again notified Amazon of its obligation to pay MHC directly for all accounts receivable attributed to M&J.

43.   Amazon Logistics has not paid the balance in response to MHC's demand.

44.   The unpaid principal balance of Amazon Logistics account on assignee M&J invoices is $64,347.26.

**Factoring for RSA**

45.   MHC's first factored an Amazon Logistics load for RSA on April 30, 2019.

46. Each time RSA sent MHC an Amazon Logistics account receivable to purchase, MHC logged in to the Amazon Logistics Portal, in the process described above, to verify it was actually due and payable by the account debtor, Amazon Logistics.

47. Upon successful verification of the account receivable, MHC would purchase it from RSA and collect the full amount from Amazon Logistics.

48. Amazon Logistics first remitted payment directly to MHC for RSA accounts on May 3, 2019.

49. Since that time, Amazon Logistics has failed to pay MHC for some of the transportation services of RSA pursuant to the Factoring Agreement or otherwise. True and correct copies of the unpaid invoices are attached and incorporated as **Exhibit G**.

50. RSA fully performed under its agreement with Amazon Logistics as to the invoices attached as Exhibit F by transporting Amazon Logistics' freight, and Amazon Logistics' failure to pay MHC for the transportation of its freight by RSA constitutes a breach of contract.

51. Around July 29, 2019, MHC sent a letter to Amazon Logistics. The letter stated Amazon Logistics was in default on its account and demanded payment, and is attached and incorporated as **Exhibit F.**

52. Amazon Logistics has not paid the balance in response to MHC's demand.

53. The unpaid principal balance of Amazon Logistics account on assignee RSA invoices is $72,422.64

7

<u>Count I – Breach of Contract</u>
<u>M&J Accounts Receivable</u>

54.   MHC incorporates by reference, as though set forth fully herein, the allegations contained in Paragraphs 1 through 53 inclusive of this Petition.

55.   Amazon Logistics contracted with M&J for the transport of certain goods on various occasions. Specifically, Amazon Logistics agreed to pay M&J to transport its brokered freight, and M&J agreed to transport that freight in exchange for money. These agreements between Amazon Logistics and M&J constituted legally binding contracts.

56.   M&J fully satisfied its obligations under those contracts and fully performed under those contracts by transporting Amazon Logistics' freight.

57.   M&J has assigned its rights under those contracts to MHC.

58.   MHC is thus the rightful owner of debt owed by Amazon Logistics.

59.   As to the invoices attached as Exhibit D, Amazon Logistics has failed and refused to pay MHC for the transport of its freight. By failing to pay pursuant to the terms of its contracts with M&J, Amazon is in breach of those terms.

60.   Upon information and belief, Amazon Logistics continued to pay M&J following receipt of the Notice of Assignment, rather than paying MHC.

61.   As a result of this breach, MHC has been damaged in the amount of $64,347.26.

WHEREFORE, MHC respectfully requests judgment against Amazon Logistics for its Count I – Breach of Contract in an amount not less than $64,347.26, plus interest, costs and attorneys' fees.

<u>Count II – Breach of Contract</u>
<u>RSA Accounts Receivable</u>

62.   MHC incorporates by reference, as though set forth fully herein, the allegations contained in Paragraphs 1 through 61 inclusive of this Petition.

63.   Amazon Logistics contracted with RSA for the transport of certain goods on various occasions. Specifically, Amazon Logistics agreed to pay RSA to transport its brokered freight, and RSA agreed to transport that freight in exchange for money. These agreements between Amazon Logistics and RSA constituted legally binding contracts.

64.   RSA fully satisfied its obligations under those contracts and fully performed under those contracts by transporting Amazon Logistics' freight.

65.   RSA has assigned its rights under those contracts to MHC.

66.   MHC is thus the rightful owner of debt owed by Amazon Logistics.

67.   As to the invoices attached as Exhibit D, Amazon Logistics has failed and refused to pay MHC for the transport of its freight. By failing to pay pursuant to the terms of its contracts with RSA, Amazon is in breach of those terms.

68.   Upon information and belief, Amazon Logistics continued to pay RSAfollowing receipt of the Notice of Assignment, rather than paying MHC.

69.   As a result of this breach, MHC has been damaged in the amount of $72,422.64.

70.   WHEREFORE, MHC respectfully requests judgment against Amazon Logistics for its Count II – Breach of Contract in an amount not less than $72,422.64, plus interest, costs and attorneys' fees.

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

<u>Count III – Violation of KSA § 84-9-406</u>
<u>M&J Account Receivables</u>

71.   MHC incorporates by reference, as though set forth fully herein, the allegations contained in Paragraphs 1 through 70 inclusive of this Petition.

72.   M&J assigned all accounts receivable to MHC pursuant to the Factoring Services Agreement, including accounts receivable due and owing by Amazon Logistics.

73.   MHC sent Amazon Logistics an authenticated Notice of Assignment.

74.   Amazon Logistics, the account debtor, may only discharge its obligation under the accounts receivable by paying MHC, notwithstanding any wrongfully misdirected payment made by Amazon Logistics.

75.   Upon information and belief, Amazon Logistics continued to pay M&J following receipt of the Notice of Assignment, rather than paying MHC.

76.   Amazon Logistics has failed to discharge its obligation under the accounts receivable and has not paid MHC for all amounts due and owing under the accounts receivable in violation of K.S.A. § 84-9-406.

77.   Pursuant to K.S.A.§ 84-9-625(b), MHC is entitled to recover damages against Amazon Logistics in the amount of its loss caused by Amazon Logistics' failure to comply with K.S.A. 84-9-406.

WHEREFORE, MHC is entitled to judgment against Amazon Logistics for its Count III - Violation of K.S.A. § 84-9-406 in the full amount of its loss caused by Amazon in the amount of $64,347.26 in account receivable assigned by M&J, plus costs and attorneys' fees incurred in the collection and enforcement to satisfy the obligations of Amazon Logistics.

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

<u>Count IV – Violation of KSA § 84-9-406</u>
<u>RSA Account Receivables</u>

78.   MHC incorporates by reference, as though set forth fully herein, the allegations contained in Paragraphs 1 through 77 inclusive of this Petition.

79.   RSA assigned all accounts receivable to MHC pursuant to the Factoring Services Agreement, including accounts receivable due and owing by Amazon Logistics.

80.   MHC sent Amazon Logistics an authenticated Notice of Assignment.

81.   Amazon Logistics, the account debtor, may only discharge its obligation under the accounts receivable by paying MHC, notwithstanding any wrongfully misdirected payment made by Amazon Logistics.

82.   Upon information and belief, Amazon Logistics continued to pay RSA following receipt of the Notice of Assignment, rather than paying MHC.

83.   Amazon Logistics has failed to discharge its obligation under the accounts receivable and has not paid MHC for all amounts due and owing under the accounts receivable in violation of K.S.A. 84-9-406.

84.   Pursuant to K.S.A.§ 84-9-625(b), MHC is entitled to recover damages against Amazon Logistics in the amount of its loss caused by Amazon Logistics' failure to comply with K.S.A. 84-9-406.

WHEREFORE, MHC is entitled to judgment against Amazon Logistics Count IV - Violation of KSA § 84-9-406 in the full amount of its loss caused by Amazon in the amount of $72,422.64 in account receivable assigned by RSA, plus costs and attorneys' fees incurred in the collection and enforcement to satisfy the obligations of Amazon Logistics.

<u>Count V – Promissory Estoppel</u>
<u>M&J Accounts Receivable</u>

85.   MHC incorporates by reference, as though set forth fully herein, the allegations contained in Paragraphs 1 through 84 inclusive of this Petition.

86.   MHC verified each Amazon Logistics account receivable submitted to it by M&J via Amazon Logistics' Portal.

87.   For each account receivable verified by M&J, Amazon Logistics' confirmed through the Portal the amount it owed for each load carried by M&J and that the load had been delivered.

88.   Amazon Logistics' representation to MHC constituted a promise to MHC that it owed the amounts stated in the accounts receivable to M&J.

89.   It was foreseeable to Amazon Logistics that MHC would rely upon Amazon Logistics' promises regarding the accounts receivable.

90.   MHC relied upon the promises of Amazon Logistics regarding the accounts receivable prior to purchasing them from M&J.

91.   Upon information and belief, Amazon Logistics continued to pay M&J following receipt of the Notice of Assignment, rather than paying MHC.

92.   Amazon Logistics now refuses to pay the amounts it previously represented were due and owing to MHC.

93.   Based on such reliance, MHC has sustained damage in the amount of $64,347.26.

WHEREFORE, MHC is entitled to judgment against Amazon Logistics for its Count V – Promissory Estoppel in an amount not less than $64,347.26, plus costs and interest.

<u>Count VI – Promissory Estoppel</u>
<u>RSA Accounts Receivable</u>

94.   MHC incorporates by reference, as though set forth fully herein, the allegations contained in Paragraphs 1 through 92 inclusive of this Petition.

95.   MHC verified each Amazon Logistics account receivable submitted to it by RSA via Amazon Logistics' Portal.

96.   For each account receivable verified by RSA, Amazon Logistics' confirmed through the portal the amount it owed for each load carried by RSA and that the load had been delivered.

97.   Amazon Logistics' representation to MHC constituted a promise to MHC that it owed the amounts stated in the accounts receivable to RSA.

98.   It was foreseeable to Amazon Logistics that MHC would rely upon Amazon Logistics' promises regarding the accounts receivable.

99.   MHC relied upon the promises of Amazon Logistics regarding the accounts receivable prior to purchasing them from RSA.

100. Upon information and belief, Amazon Logistics continued to pay RSA following receipt of the Notice of Assignment, rather than paying MHC.

101. Amazon Logistics now refuses to pay the amounts it previously represented were due and owing.

102. Based on such reliance, MHC has sustained damage in the amount of $72,422.64.

WHEREFORE, MHC is entitled to judgment against Amazon Logistics for its Count VI – Promissory Estoppel in an amount not less than $72,422.64, plus costs and interest.

Respectfully submitted,

SEIGFREID BINGHAM, PC

*Attorneys for MHC Financial Services, Inc.*

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

By:     /s/ Julie E. Parisi
        Julie E. Parisi (25991)
        jparisi@sb-kc.com
        Mark U. Opara (25198)
        mopara@sb-kc.com
        Benjamin A. Reed (23014)
        breed@sb-kc.com
        2323 Grand Boulevard, Suite 1000
        Kansas City, Missouri 64108
        T: (816) 421-4460
        F: (816) 474-3447

14

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA



**EXHIBIT A**

# FACTORING SERVICES AGREEMENT

**THIS FACTORING SERVICES AGREEMENT** (this "**Agreement**") is made and entered into as of the 5/8/2019 by and between MHC Financial Services, Inc., a Missouri corporation ("**Purchaser**"), and Jose Ramos DBA M&J Logistics ("**Client**").

In consideration of and for the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser and Client agree as follows:

1.  **Purchase of Accounts**. Client agrees to sell, assign, transfer and convey to Purchaser all of its existing and future accounts receivable arising from services performed in the regular course of Client's business; i.e., any right to payment from any party for services rendered by or on behalf of Client (the "**Accounts**"). Client shall present all Accounts to Purchaser for purchase, with recourse, and Purchaser shall determine, in its sole discretion, which Accounts it deems acceptable for purchase. Purchaser may elect to purchase such Accounts it deems to be acceptable, in accordance with the terms and conditions hereof, and Client shall sell, assign, transfer and convey such Accounts to Purchaser. Client agrees to sell, assign, transfer and convey all of its Accounts to Purchaser, regardless of whether Client fails to present any of such Accounts to Purchaser for purchase as required hereunder. Client shall execute and deliver to Purchaser a Bill of Sale and Assignment, in the form attached hereto as **EXHIBIT A**, which shall vest in Purchaser all of Client's right, title and interest in said Accounts, together with any undercharges, securities and/or guarantees thereon. Client shall retain all original paperwork related to the Accounts (i.e., bills of lading, unloading receipts and other documentation supporting the Accounts) until the termination of the Agreement. Client shall be required to produce original paperwork upon request to Purchaser within 2 business days.

2.  **Purchase Price; Base Fee**. The purchase price for each Account purchased by Purchaser hereunder shall be the net amount of such Account, less PURCHASER's base fee, which fee shall be an amount equal to 3.0 % of such net amount (the "**Base Fee**"). For purposes of the foregoing, the "net amount" of an Account means the gross amount/face value of the Account less any discount or allowance of any nature offered or provided to the person or entity obligated to pay the Account ("**Account Debtor**"). Upon presentation by Client to Purchaser of an acceptable invoice for an Account approved for purchase by Purchaser (along with all supporting documentation for such Account, including bills of lading, rate confirmation, loading receipts and any other documents substantiating the Account), and provided that no claim or dispute shall then exist with the Account Debtor with respect to the Account, Purchaser will advance to Client the purchase price of the Account, less a security reserve equal to 1.0 % of the net amount of the Account, with a minimum reserve amount of 0.0 . Following Purchaser's receipt of full payment of the invoice for the Account from the Account Debtor, and provided Client shall not otherwise be in default in any respect under this Agreement, Purchaser will remit to Client the security reserve, less any Late Fees pursuant to Section 5 hereof, any other amounts owed by Client to Purchaser, and any and all shipping charges and transactional fees as set forth on **EXHIBIT B** attached hereto and incorporated herein by reference, in complete and full payment for the Account. Purchaser will account for all Accounts and security reserves separately, but the parties expressly acknowledge and agree that Purchaser will aggregate the security reserves for all Accounts purchased from Client hereunder, and, with respect to those Accounts which Purchaser has received full payment, and provided Client shall not otherwise be in default in any respect under this Agreement, shall remit such security reserve balances in excess of the minimum reserve requirement (less the applicable deductions, fees and charges), if any, to Client no more frequently than on a monthly basis upon requests from Client, without interest, in full payment for the applicable Accounts, provided also that Client's Account Debtors shall be current on all payments as determined by the applicable invoice/payment terms of each Account. In the event Client's security reserve balance becomes negative, Purchaser may deduct amounts from future purchases to offset the deficit security reserve or, upon demand by Purchaser, Client shall immediately pay to Purchaser the full amount of the deficit.

3.  **Notice to Account Debtors**. Client will notify each Account Debtor of the sale of its Account or Accounts to Purchaser and shall place a clear statement or legend, approved by Purchaser, on each such Account invoice, bill of lading, purchase order or statement, stating that such Account has been sold and assigned, and is payable to Purchaser at 11120 Tomahawk Creek Parkway Leawood, KS 66211, or at such other address as Purchaser shall designate in writing. Such notices shall be in the form attached hereto as **EXHIBIT C**. All remittances received by Client for payment of Accounts sold to Purchaser are the property of Purchaser, and Client shall hold such proceeds in trust for Purchaser, and shall immediately deliver to Purchaser, in the identical form, all

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

payments received by Client on each such Accounts, together with all documents accompanying the remittance to Client.  Client guarantees the timely payment of the monies and amounts represented by the assigned Accounts. Client agrees that it will not attempt to direct any payments on Accounts purchased hereunder other than to Purchaser.

4.    **Power of Attorney**.  Client does hereby irrevocably make, constitute and appoint Purchaser as its attorney-in-fact with full power and authority to act in its stead for the following purposes: (a) invoice or bill for, collect, receive, and deposit to Client's and/or Purchaser's bank accounts any and all amounts which may be due or become due to Client from Account Debtors, and to use Client's name for purposes of billing and collection of any and all amounts due from Account Debtors; (b) receive, accept, open, dispose of and redirect any and all mail addressed to Client; (c) negotiate any checks received in payment of Accounts whether payable to Client or Purchaser or both, and endorse the name of Client on any checks or other evidences of payment or other instruments or documents that may come into the possession of Purchaser on Accounts purchased by Purchaser and on any invoices or other documents or instruments relating to any of the Accounts or relating to any collateral or security hereby granted by Client to Purchaser; (d) in Client's name, or otherwise, demand, make claim for, sue for, collect, grant extensions, compromise, discharge, and get or give releases for any and all monies or funds due or to become due on the Accounts; (e) execute and deliver receipts or acknowledgements to Account Debtors for such amounts due which shall be binding upon Client and Purchaser; (f) notify Account Debtors of the sale of Accounts to Purchaser and notify and instruct Account Debtors, in Client's name, of the address and procedures for making payments on any Accounts that are sold to Purchaser or which constitute collateral hereby granted by Client to Purchaser; (g) take all steps necessary to ensure payment of such amounts and monies due, and do any and all things in Client's name necessary or proper to carry out the purposes intended by this Agreement; (h) file financing statements and all amendments thereto, describing as collateral any or all of the collateral described in Section 6 hereof by any description Purchaser deems appropriate in any jurisdiction or office Purchaser deems appropriate to perfect its security interest in the collateral described in Section 6 hereof; (i) initiate debit or credit entries through the Federal Reserve Automated Clearing House System (ACH) to any deposit account maintained by Client or Purchaser wherever located in order to satisfy any obligations of Client to Purchaser under this Agreement; and (j) make claims under any applicable cargo insurance policy held by or on behalf of Client for any cargo loss, damage, theft, delay or injury to cargo, and direct the insurance proceeds to pay any outstanding amounts due to Account Debtors or Purchaser as a result of the loss, destruction or damage.  It is understood that this power of attorney is coupled with an interest, and is irrevocable until all obligations of Client to Purchaser under this Agreement have been satisfied.  Exercise of the foregoing powers shall be in the sole and absolute discretion of Purchaser, but Purchaser shall have no obligation to exercise any of the foregoing powers.  Nothing contained in this Agreement shall in any way require Purchaser to initiate or become a party to any litigation or other legal proceedings. Purchaser shall not, under any circumstances, or in any event whatsoever, have any liability for any error, omission or delay of any kind occurring in the collection, payment or settlement of any Account or of any instrument received in full or in part payment thereof or in dealing with any lien, security or guaranty of any such Account.  To facilitate Purchaser's ability to exercise the power of attorney with respect to insurance policy claims as described in item (j) above, Client shall execute and deliver to Purchaser an Insurance Power of Attorney, in the form attached hereto as **EXHIBIT D**, which shall grant to Purchaser all of Client's right, power and authority to make claims under Client's cargo insurance policy.

5.    **Late Fees; Full Recourse**.  All Accounts purchased by Purchaser from Client are purchased with full recourse including Purchaser's right to require Client's repurchase of Account(s) as set forth in this Section 5. However, Purchaser has purchased certain credit insurance to insure against certain failures of certain Account Debtors to satisfy the payment Accounts purchased by Purchaser ("Credit Insurance").  To the extent Purchaser chooses to file a claim with the insurer issuing the Credit Insurance, and Purchaser actually receives the amount it is entitled to recover under such Credit Insurance (up to the limit of such Credit Insurance), Accounts of such Account Debtor purchased by Purchaser shall be deemed non-recourse. If Client breaches any warranty or otherwise violates or defaults on any of its obligations hereunder, or if Purchaser reasonably determines at any time that any Account purchased by Purchaser hereunder is uncollectible, or if any Account purchased by Purchaser hereunder is not paid in full within 90 days after the Account invoice date, then upon request by Purchaser, Client shall immediately repurchase such Account(s) from Purchaser for an amount equal to the net amount of such Account(s), less any payments received by Purchaser on such Account(s) from the Account Debtor(s).  Further, Client expressly acknowledges and agrees that the Base Fee pursuant to Section 2 hereof shall increase to          % if an Account invoice remains unpaid after          days, and shall increase again to          % if an invoice remains unpaid for an additional          day period.

2

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

The incremental increases in the Base Fee described above in this Section 5 shall be referred to herein as "Late Fees". Any security reserve held by Purchaser for such Account shall be released only in accordance with Section 2 hereof, and Purchaser shall, in any event, be entitled to and shall retain its Base Fee and all Late Fees for the Account as set forth herein.

6. **Security Interest**. Client hereby grants to Purchaser as collateral, to secure all of the debts, liabilities and obligations of Client to Purchaser under this Agreement, including all costs and expenses incurred by Purchaser in connection with the enforcement of its rights under this Agreement, a continuing security interest in the following property of Client: (a) all Accounts, wherever located or situated, and whether now existing or arising in the future, and whether now owned or at any time in the future acquired by Client; all guaranties and security for such Accounts; all of Client's rights and interest in the goods giving rise to such Accounts, and the rights associated with or related or pertaining to such goods, including without limitation the right of stoppage in transit and any and all related insurance, any items substituted therefor as replacements and all additions thereto; (b) all of Client's chattel paper, instruments, general intangibles, securities, contract rights, associated with or related to the Accounts; (c) all proceeds of any of the foregoing Accounts, and all rights and interests and monies due or becoming due on such Accounts; and (d) all other personal property in which Client has an interest, now or hereafter existing or acquired, and wheresoever located, tangible or intangible, including, but not limited to, all present and hereafter existing or acquired vehicles, equipment, tools, goods, inventory, furniture, fixtures, contract rights, chattel mortgages, deeds of trust, stocks, bonds, certificates of deposit, bank accounts, security deposits, intellectual property and other general intangibles. Upon request by Purchaser, Client shall execute a Security Agreement in a form provided by Purchaser evidencing the foregoing security interest. Purchaser may file financing statements and amendments thereto describing as the collateral any or all of the foregoing collateral by any description Purchaser deems appropriate in any jurisdiction or office Purchaser deems appropriate to perfect its security interest in foregoing collateral. In the event of Client's breach of any warranty made in this Agreement, Client's failure to observe or perform any of the provisions or obligations of this Agreement or Client's (including Client's affiliates) default of any other written agreement with Purchaser or Purchaser's affiliates as defined in section 17 of the Agreement, Client shall be in default, and Purchaser may enforce payment and exercise any and all of the rights and remedies provided by Article 9 of the Uniform Commercial Code. In addition, upon default by Client, Purchaser shall also have the right to take all actions necessary to collect the Accounts directly from the Account Debtors. Without limiting the foregoing, Client agrees that if Client fails to present any of Client's Accounts to Purchaser for purchase as required hereunder, then Client shall be in default and shall owe to Purchaser liquidated damages for such default in an amount equal to the Base Fee which would have otherwise been payable hereunder with respect to such Account(s).

7. **Personal Guaranty; Background Check**. To induce Purchaser to enter into this Agreement and to purchase the Accounts from Client, and as additional security for all of the debts, liabilities and obligations of Client to Purchaser under this Agreement, one or more owners of Client shall execute the Personal Guaranty form attached hereto as **EXHIBIT E**, pursuant to which said owner(s) shall unconditionally guaranty the obligations of Client under this Agreement. Such owner(s) must also consent to a personal credit check and comprehensive background investigation.

8. **Term and Termination**. The term of this Agreement shall commence as of the day and year first above written, and shall continue for an initial term of one year. Thereafter, this Agreement shall automatically renew for additional consecutive one year terms, unless either party provides the other party with written notice of its intent not to renew at least 90 days prior to expiration of the then current term. Notwithstanding the stated term hereof, Purchaser may terminate this Agreement immediately upon written notice thereof to Client in the event Client breaches this Agreement or in the event of the insolvency of Client or the filing of a petition in bankruptcy by or against Client. Further, notwithstanding anything herein to the contrary, Purchaser may terminate this Agreement without cause by providing Client with at least 30 days prior written notice thereof. Expiration or earlier termination of this Agreement shall not affect, waive or release the rights and obligations of the parties hereunder with respect to any Accounts purchased by Purchaser prior to such expiration or termination, and Client shall remain liable to Purchaser for all amounts and monies as may be owed to Purchaser under the terms and conditions of this Agreement. Upon termination, any security reserve, and any other funds or monies from any source whatsoever which Purchaser would otherwise owe to Client, may be retained by Purchaser until such time as all obligations and debts of Client to Purchaser have been fully satisfied, and Purchaser's security interest provided in Section 6 hereof shall continue until all obligations of Client to Purchaser are paid in full. Purchaser shall have the right, in its sole discretion, to set off against the security reserve and any other sums owing to Client by Purchaser all obligations and

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

debts of Client to Purchaser, including any debts of Client or Client's affiliates (as defined in Section 17) under other agreements. All of Client's covenants, warranties and agreements under this Agreement made to Purchaser, as well as Purchaser's security interest pursuant to Section 6 above, shall continue in full force and effect until all Accounts purchased hereunder and all debts and obligations of Client to Purchaser are paid in full.

9.      **Representations and Warranties**. Client represents, covenants, warrants and agrees as follows:

(a)     If Client is a corporation or limited liability company, that it is duly organized, existing and in good standing under the laws of the state of its incorporation or organization, and that the execution, delivery and performance of this Agreement are in every respect within its corporate/company powers and have been duly authorized by appropriate corporate/membership action.

(b)     That this Agreement, when duly executed and delivered by Client and Purchaser, will constitute a legal, valid and binding agreement of Client fully enforceable in accordance with its terms and conditions.

(c)     Client's address set out in Section 12 of this Agreement is the address of Client's principal office and its sole place of business. Client shall give Purchaser immediate written notice of any change in the location of its principal office, the addition of any new place or places of business and their addresses, any name change or the addition of any name under which Client does business, or any change in the nature or status of Client's business or operations.

(d)     Client is registered with the U.S. Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA"), and has a valid USDOT Number and the requisite operating authority from the FMCSA to conduct its motor carrier operations, in accordance with the requirements of the Federal Motor Carrier Safety Regulations.

(e)     As to each Account purchased by Purchaser under this Agreement: (1) the Account is not yet past due, arose in the ordinary course of Client's business and represents a bona fide completed transaction; (2) Client owns the Account free and clear of all liens, security interests and/or any other encumbrance, Client's ownership of and right and title to the Account is absolute and subject to no assignment or claim, and Client shall not assign, grant a security interest in or encumber the Account contrary to this Agreement; (3) the Account, as shown on Client's books and records, and on any invoices, bills of lading or statements, delivered to Purchaser is a legally enforceable debt owed by Account Debtor to Client in its full face amount, and is not contingent upon the fulfillment of any condition whatsoever; (4) no partial payment has been made by anyone on such Account; (5) no set off, credit, allowance, adjustment, counterclaim or defense to such Account exists or will exist and no agreement has been made or will be made with any person or entity under which any deduction or discount may be claimed on such Account; (6) the Account is payable not more than 30 days from the date of assignment of the Account to Purchaser.

(f)     Client shall execute any and all financing statements, Uniform Commercial Code forms or other documents or instruments which Purchaser deems necessary and/or appropriate to protect its interest under this Agreement.

(g)     Client shall indemnify, defend and hold harmless Purchaser from and against any and all misrepresentations or breaches of warranty or other defaults hereunder by Client; from any dispute or claim resulting in liability, loss, expense, cost or attorneys' fees caused by or arising out of the rejection of any work performed or services rendered by Client; or from any alleged claim, dispute, action, defense or set off of every kind and nature asserted by any Account Debtor.

(h)     Client shall not, without the express written consent of Purchaser, release, compromise, settle or adjust any Account purchased hereunder, or grant any discounts, allowances or credits thereon.

The representations, covenants and warranties set forth in this Section 9 shall survive expiration or termination of this Agreement, regardless of reason.

4

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

Contract Number:  00000219
1138778v5

10.     **Recordkeeping**.  All of Client's books, accounts, ledgers, correspondence, records and papers pertaining to all of the Accounts and Client's business shall be accurately and properly prepared and maintained by Client and shall disclose the sale of Accounts purchased by Purchaser.  All such books, ledgers, accounts, records, correspondence and papers shall be made available by Client at all reasonable times for Purchaser's inspection, audit and copying.  Client shall, upon the request of Purchaser, furnish Purchaser with financial statements, including income statements and balance sheets showing Client's financial condition.

11.     **Attorneys Fees**.  If Purchaser retains the services of an attorney to enforce any obligation of Client to Purchaser under this Agreement, Purchaser shall be entitled to recover from Client all attorneys fees, court costs and expenses, regardless of whether or not an action is commenced.

12.     **Notice**.  Notices under this Agreement shall be in writing and mailed postage prepaid, registered or certified mail, return receipt requested, or sent by overnight delivery service, or by facsimile transmission to the recipient's facsimile machine, addressed to the addresses set forth below, or to such other addresses as either party notifies the other in writing.  All such notices shall be effective upon receipt if delivered by hand or facsimile or overnight delivery service; otherwise upon three (3) business days after the notice is placed in the U.S. Mail. Addresses for notices are as follows:

If to PURCHASER:                              If to Client:

                                              Jose Ramos DBA M&J Logistics
                                              Jose Ramos
MHC Commercial Finance
11120 Tomahawk Creek Parkway
Leawood, KS 66211                             302 Avenue C
Fax: (816) 242-6249                           Richmond              TX    77406

13.     **Governing Law**.  This Agreement is accepted and made in the state of Kansas and this Agreement and the rights of the parties hereunder shall be interpreted under and governed as to construction, enforcement and validity by the laws of the state of Kansas.  Purchaser and Client agree that any legal suit, action or proceeding arising out of or related to this Agreement shall be instituted, heard and resolved solely and exclusively in a State or Federal Court in or for Johnson County, Kansas.  Purchaser and Client submit to the jurisdiction of the State and Federal Courts for Johnson County, Kansas for the purpose of deciding any questions, disputes or causes, arising under this Agreement.  In the event that any one or more of the provisions in this Agreement should be held by any court of competent jurisdiction to be unenforceable, the holding or decision shall not affect or impair any of the other provisions of this Agreement.

14.     **Waiver**.  No delay or omission on the part of Purchaser in enforcing or exercising any right hereunder shall operate as a waiver of such right or any other right.  The waiver by Purchaser of the breach by Client of any provision of this Agreement shall not be construed as a waiver of any other breach.  No waiver or modification of the Agreement shall be enforceable or chargeable against Purchaser unless it is in writing, signed by Purchaser and delivered by Purchaser to Client.

15.     **Miscellaneous Provisions**.  This Agreement shall binding upon and inure to the benefits of the parties hereto and their respective successors and assigns; provided, however, that this Agreement may not be assigned by Client without the prior written consent of Purchaser.  The waiver, compromise, discharge, extension or release by Purchaser of any duty or obligation of any Account Debtor shall not reduce, diminish, limit or restrict in any way Client's obligations and liabilities to Purchaser.  Duties and obligations imposed by this Agreement and rights and remedies available hereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.  The parties agree to do all acts and things, and to make, execute and deliver such written instruments, as shall from time to time be reasonably required to carry out the terms and provisions of this Agreement.  All headings, titles and section captions are inserted in this Agreement for convenience of reference only, are descriptive only and shall not be deemed or construed to add to, detract from or otherwise modify the meaning of the sections or provisions hereof.  This Agreement constitutes the exclusive statement of the agreement of the parties with respect to the subject matter hereof, and this Agreement supersedes and replaces all prior and contemporaneous agreements, discussions and representations, whether written or oral, relating to the subject matter hereof.  The terms and provisions of this Agreement can only be amended, altered, changed, modified, supplemented or waived pursuant to a writing signed by the parties hereto.  Client consents to

5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

contract electronically with Purchaser for purposes of this Agreement and any subsequent agreement between Client and Purchaser or Purchaser's affiliates and understands that Client is entering into a legal agreement by agreeing to this Agreement and intends to be legally bound by such agreement. Any termination of Client's consent to conduct business electronically shall not affect the legal enforceability of any Agreement entered into prior to such withdrawal of consent. This Agreement may be executed in one or more counterparts and each counterpart with a mark demonstrating intent to be bound by the terms thereof, whether an original handwritten signature, facsimile, electronic acknowledgement, or any other mark accepted to bind parties to an agreement under applicable law is considered an original and all counterparts shall constitute one and the same instrument.

16.  **Authorization for Certificates of Insurance**.  As a material condition of this Agreement, Client agrees to execute the authorization form attached hereto as **EXHIBIT F**, pursuant to which Client authorizes its insurance carriers to provide to Purchaser, upon its request, a list of all customers/shippers to whom/which such insurance carriers issued certificates of insurance for Client's insurance coverage and/or copies of all certificates of insurance issued by such insurance carriers to customers/shippers relating to Client's insurance coverage.  Such authorization shall be irrevocable during term of this Agreement.

17.  **Other Agreements**.  If Client is party to one or more conditional sale contracts, equipment purchase agreements,  lease agreements, chattel mortgages, security agreements, factoring services agreements, notes and/or other loan agreements with Purchaser or an affiliate of Purchaser, and Client desires to directly pay Client's obligations thereunder to Purchaser or Purchaser's affiliate, on Client's behalf, from available funds in Client's security reserve balances and/or from proceeds of the Accounts (after payment of fees and charges owed to Purchaser hereunder), then Client must make a written request for such direct payment. Accordingly, Client hereby authorizes Purchaser to pay Client's obligations under any such agreements from available funds in Client's security reserve balances, in excess of minimum reserve requirements, and/or from proceeds of the Accounts (after payment of all fees and charges owed to Purchaser hereunder) upon the written request of Client. For purposes of this Section 17, an "affiliate" shall include any person or entity that, directly or indirectly through one or more intermediaries, is in control of, is controlled by, or is under direct or indirect common control with Purchaser.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers, effective as of the day and year first above written.

MHC Financial Services, Inc.:                                    Jose Ramos DBA M&J Logistics

**Purchaser**                                                              **Client**

By    _Joe Moran_                                              By    _Jose Ramos_
Name   Joe Moran                                              Name   Jose Ramos
Title   Director of Commercial Finance              Title   Owner

                                                                          By    _____
                                                                          Name   _____
                                                                          Title   _____

                                                                          By    _____
                                                                          Name   _____
                                                                          Title   _____

Contract Number: 00000219
1138778v5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

## EXHIBIT A

## BILL OF SALE AND ASSIGNMENT

**FOR VALUE RECEIVED**, the receipt and sufficiency of which is hereby acknowledged, Jose Ramos DBA M&J Logistics ("**Assignor**"), does hereby grant, sell, assign, transfer and convey unto MHC Financial Services, Inc., a Missouri corporation ("**Purchaser**"), its successors and assigns, the accounts receivable arising from services performed in the regular course of Assignor's business, as described on the schedule of accounts attached hereto and/or evidenced by the invoices attached hereto, which are incorporated herein by this reference (the "**Accounts**").

**TO HAVE AND TO HOLD** the same unto Purchaser, its successors and assigns, forever, Assignor hereby representing and warranting that it conveys good and merchantable title to the Accounts, free and clear of all liens, encumbrances, and security interests, and that it will warrant and defend the title to the Accounts unto Purchaser, its successors and assigns, forever against the claims and demands of all persons whomsoever.

**IN WITNESS WHEREOF**, Assignor has executed this Bill of Sale and Assignment effective as of 5/8/2019                 .

"Assignor":

By    _Jose Ramos_
        42BF9213B551469...

Name   Jose Ramos

Title   Owner

By   _____

Name   _____

Title   _____

By   _____

Name   _____

Title   _____

7

Contract Number: 00000219
1138778v5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

**EXHIBIT B**

**Transaction Fees**

- Transaction Fees (ACH and/or Fuel Card)    $ 5.0

- Minimum Invoice Fee                         $ 20.0

**One Time Fees and Charges**

- UCC Filing Fee                              $ 100.0

**Additional Fees and Charges**
**\*note these charges only occur if you ask for these services\***

- Bank Wire Fee                               $ 25.0

- AM/PM Rush Bank Wire Fee                     $  50.00

- Non Sufficient Funds Fee (per check)         $  50.00

- Check deposited by Client
  belonging to Purchaser                       $  150.00        per Invoice Paid

Client expressly acknowledges and agrees that such fees and charges are subject to change by Purchaser from time to time, and that certain additional fees/charges may be assessed based on increased cost to Purchaser and/or third party charges.  In the event of any such change, Purchaser will provide Client written notice thereof, and the new fee schedule shall be incorporated herein by this reference. The foregoing is expressly agreed to and accepted by Client:

By _____

Name  Jose Ramos

Title  Owner


By _____

Name _____

Title _____


By _____

Name _____

Title _____

8

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

EXHIBIT C

## NOTICE OF ASSIGNMENT

TO:[                                                  ]

ATTN: **ACCOUNTS PAYABLE MANAGER**              E-MAIL:

REGARDING: Jose Ramos DBA M&J Logistics

MC#:  3234205                                     DATE: 5/8/2019

The purpose of this Notice of Assignment is to inform you that the above-named carrier has assigned all of its current and future accounts receivable and the proceeds thereof to Purchaser.  Accordingly, Purchaser now owns ALL of above-named carrier's accounts receivable and has the sole and exclusive right to collect and retain the same.  The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. You may have received, or will be receiving, invoices for services rendered by this carrier.  **Please be advised that ALL such invoices (past, present, and future) must be paid directly to Purchaser as indicated below:**

| Payments by mail: | Electronic Payments: |
|---|---|
| | Account:  987 222 4221 |
| Murphy Hoffman Company | Routing:  101 000 695 |
| P.O. Box 874091 | Reference: 3234205 |
| Kansas City, MO 64187 | *Please submit supporting documents via email to:* |
| | Email: ACH.payments@mhc.com |

Your compliance with this assignment is authorized and directed by the above-named carrier, as evidenced by the duly authorized signature of the carrier below.  This assignment can only be revoked in writing signed by both Purchaser and the above-named carrier.  In the event there is any claim or dispute that may affect payment of any invoice, or if any person or entity other than Purchaser attempts to collect or claims any right to any such invoices/accounts receivable, then please notify Purchaser immediately, and do not make any payment on such accounts to any other party (including the above-named carrier).  **Payment to the carrier or any other party will not discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.**

Your cooperation with this Notice of Assignment and timely payment of all such invoices as directed will be greatly appreciated, and will help to avoid duplicate payments and/or legal action.  Although all funds and payments will be redirected to Purchaser, please continue to send all 1099's directly to the carrier. Please make the proper notations on your ledger. Lastly, by sending payment to Purchaser you acknowledge invoices are not subject to any claims or defenses or right to offset you may have against the carrier. Thank you.

***IF YOU HAVE QUESTIONS OR WOULD LIKE ADDITIONAL INFORMATION PLEASE CONTACT US AT 844-891-3509.***

| | |
|---|---|
| **Purchaser** | The foregoing is authorized and directed by the above-named carrier: |
| **MHC Financial Services, Inc.** | |
| *DocuSigned by:* | By _Jose Ramos_ |
| *Joe Moran* | Name _Jose Ramos_ |
| | Title _Owner_ |
| | |
| | By _____ |
| | Name _____ |
| | Title _____ |

9

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

## EXHIBIT D

### Insurance Power of Attorney

STATE OF KANSAS       )
                           ) ss.
COUNTY OF JOHNSON      )

_____

       Know all men by these presents, that I  Jose Ramos                           , the undersigned, of                       County, Richmond          , TX    do hereby make, constitute and appoint Purchaser, a Missouri corporation, my true and lawful attorney-in-fact for me and in my name, place and stead, and on my behalf, for the specific purpose of making claims under any cargo insurance policy held by or on behalf of me or my trucking company known as
 Jose Ramos DBA M&J Logistics                             .  Purchaser shall have the power to make a claim or exercise any rights, options or benefits under any such insurance policy for any loss, damage, theft, delay or injury to cargo related to accounts receivable that have been purchased by Purchaser for services rendered by or on behalf of me or my company.  Further, Purchaser shall have the power to direct and/or assign any insurance proceeds resulting from such claim to satisfy any outstanding obligations to account debtors which may exist as a result of any loss, damage, theft, delay or injury to cargo.

       The rights, powers and authority of said attorney-in-fact granted in this instrument shall commence and be in full force and effect on the date hereof and such rights, powers and authorities shall remain in full force and effect for the purpose herein specified until all of my obligations to Purchaser under that certain Factoring Services Agreement dated  5/8/2019         have been satisfied.

Dated: 5/8/2019

                                      DocuSigned by:

By   _Jose Ramos_____
                 42DF921305514D9...

Name  Jose Ramos_____

Title  Owner_____

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

Contract Number:  00000219
1138778v5

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

## EXHIBIT D

### Insurance Power of Attorney

STATE OF KANSAS   )
           ) ss.
COUNTY OF JOHNSON )

---

   Know all men by these presents, that I                  , the undersigned, of          County,        ,   do hereby make, constitute and appoint Purchaser, a Missouri corporation, my true and lawful attorney-in-fact for me and in my name, place and stead, and on my behalf, for the specific purpose of making claims under any cargo insurance policy held by or on behalf of me or my trucking company known as

                    .   Purchaser shall have the power to make a claim or exercise any rights, options or benefits under any such insurance policy for any loss, damage, theft, delay or injury to cargo related to accounts receivable that have been purchased by Purchaser for services rendered by or on behalf of me or my company.  Further, Purchaser shall have the power to direct and/or assign any insurance proceeds resulting from such claim to satisfy any outstanding obligations to account debtors which may exist as a result of any loss, damage, theft, delay or injury to cargo.

   The rights, powers and authority of said attorney-in-fact granted in this instrument shall commence and be in full force and effect on the date hereof and such rights, powers and authorities shall remain in full force and effect for the purpose herein specified until all of my obligations to Purchaser under that certain Factoring Services Agreement dated          have been satisfied.

Dated:

                By  _____

                Name  _____

                Title  _____

11

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

## EXHIBIT E

## PERSONAL GUARANTY

For valuable consideration and to induce MHC Financial Services, Inc. ("Purchaser") to enter into that certain Factoring Services Agreement dated _____5/8/2019_____ (the "Agreement") with _____Jose Ramos DBA M&J Logistics_____ ("Client"), I/we, the undersigned Guarantor(s), do hereby unconditionally guarantee to Purchaser, its successors and assigns, the full, prompt and complete performance by Client of all of the provisions, conditions, covenants and agreements contained in the Agreement, including the full and complete payment of all monies that became due thereunder to Purchaser by Client, and do hereby waive all notice of default by Client and notice of acceptance of this guaranty by Purchaser, and do hereby consent to any extension of time that may be given by Purchaser to Client of time for payment or performance.  If, at any time, Client shall fail to timely pay any amounts owed to Purchaser under the Agreement or otherwise fail to perform any of its obligations under the Agreement, then the undersigned shall promptly pay the same or perform the same in the place and stead of Client.  This guaranty is not limited to any particular period of time, but shall continue until all of the terms, covenants, and conditions of the Agreement have been fully and completely performed by Client, and the undersigned shall not be released of any obligation or liability hereunder so long as there is any claim of Purchaser against Client arising out of or relating to the Agreement that has not been settled or discharged in full.  The undersigned waive(s) any right to require Purchaser to proceed against Client, any account debtors or customers of Client, or any other person, debtor or guarantor, or to proceed against or exhaust any security or pursue any other remedy in Purchaser's power.  Whether or not a suit is initiated, the undersigned shall pay all reasonable attorneys' fees and all other costs and expenses incurred by Purchaser in enforcing this guaranty and in any actions or proceedings arising out of or relating to this guaranty.  This guaranty shall be governed and construed in accordance with the laws of the state of Kansas.  The undersigned hereby consents to the sole and exclusive jurisdiction of any state or Federal court within the state of Kansas in connection with the enforcement of this guaranty.

Guarantor(s):

_____
[Signature]
Jose Ramos
_____
[Printed Name]
5/8/2019
_____
[Date]


_____
[Signature]

_____
[Printed Name]

_____
[Date]


_____
[Signature]

_____
[Printed Name]

_____
[Date]

12

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

## EXHIBIT F

### Authorization for Certificates of Insurance

The undersigned Client of Purchaser hereby expressly authorizes any and all of its liability and cargo insurance carriers to provide to Purchaser, upon its request, a list of all customers/shippers to whom/which such insurance carriers issued certificates of insurance for the undersigned Client's insurance coverage and/or copies of all certificates of insurance issued by such insurance carriers to customers/shippers relating to the undersigned Client's insurance coverage.  Such authorization shall be effective from and after the date below.

Authorized by Client:

By _____

Name  Jose Ramos

Title  Owner

Date  5/8/2019

By _____

Name _____

Title _____

Date _____

By _____

Name _____

Title _____

Date _____

Contract Number: 00000219
1138778v5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*



**From:** Collections - MHC Commercial Finance
**To:** Vincent, Jayna
**Subject:** Notice of Assignment for Jose Ramos dba M&J Logistics
**Date:** Monday, July 22, 2019 9:58:40 AM
**Attachments:** image001.png
image002.png
image003.png
image004.png
image005.png
image006.png
NOA.pdf

---

**From:** Mane, Euklit
**Sent:** Tuesday, May 21, 2019 2:47 PM
**To:** mosaic-inquiries@amazon.com
**Cc:** Collections - MHC Commercial Finance
**Subject:** Notice of Assignment for Jose Ramos dba M&J Logistics

Please confirm receipt of the attached Notice of Assignment for Jose Ramos dba M&J Logistics. All payments related to this carrier should be paid to MHC Financial Services, Inc.

**Euklit Mane**
*Account Manager*



**MHC Financial Services**
4501 College Blvd., Suite 160 ׀ Leawood, KS 66211

(816) 912-5906 ׀ direct
(816) 242-6249 ׀ fax
MHC website | vCard | blog | map

  

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

**EXHIBIT C**

## NOTICE OF ASSIGNMENT

TO:[                                    ]

ATTN: **ACCOUNTS PAYABLE MANAGER**          E-MAIL:

REGARDING: Jose Ramos DBA M&J Logistics

MC#:  3234205                           DATE: 5/8/2019

The purpose of this Notice of Assignment is to inform you that the above-named carrier has assigned all of its current and future accounts receivable and the proceeds thereof to Purchaser.  Accordingly, Purchaser now owns ALL of above-named carrier's accounts receivable and has the sole and exclusive right to collect and retain the same.  The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. You may have received, or will be receiving, invoices for services rendered by this carrier.  **Please be advised that ALL such invoices (past, present, and future) must be paid directly to Purchaser as indicated below:**

|  |  |
|---|---|
| **Payments by mail:** | **Electronic Payments:** |
|  | Account:  987 222 4221 |
| Murphy Hoffman Company | Routing:  101 000 695 |
| P.O. Box 874091 | Reference: 3234205 |
| Kansas City, MO 64187 | *Please submit supporting documents* |
|  | *via email to:* |
|  | Email: ACH.payments@mhc.com |

Your compliance with this assignment is authorized and directed by the above-named carrier, as evidenced by the duly authorized signature of the carrier below.  This assignment can only be revoked in writing signed by both Purchaser and the above-named carrier.  In the event there is any claim or dispute that may affect payment of any invoice, or if any person or entity other than Purchaser attempts to collect or claims any right to any such invoices/accounts receivable, then please notify Purchaser immediately, and do <u>not</u> make any payment on such accounts to any other party (including the above-named carrier).  **<u>Payment to the carrier or any other party will not discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.</u>**

Your cooperation with this Notice of Assignment and timely payment of all such invoices as directed will be greatly appreciated, and will help to avoid duplicate payments and/or legal action.  Although all funds and payments will be redirected to Purchaser, please continue to send all 1099's directly to the carrier. Please make the proper notations on your ledger. Lastly, by sending payment to Purchaser you acknowledge invoices are not subject to any claims or defenses or right to offset you may have against the carrier. Thank you.

***<u>IF YOU HAVE QUESTIONS OR WOULD LIKE ADDITIONAL INFORMATION PLEASE CONTACT US AT 844-891-3509.</u>***

|  |  |
|---|---|
|  | The foregoing is authorized and directed by the above-named carrier: |
| **Purchaser** |  |
| **MHC Financial Services, Inc.** |  |
| *Joe Moran* | By _____ |
|  | Name   Jose Ramos |
|  | Title   Owner |
|  |  |
|  | By _____ |
|  | Name _____ |
|  | Title _____ |

Contract Number: 00000219
1138778v5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7



# FACTORING SERVICES AGREEMENT

**THIS FACTORING SERVICES AGREEMENT** (this "**Agreement**") is made and entered into as of the 4/24/2019 by and between MHC Financial Services, Inc., a Missouri corporation ("**Purchaser**"), and RSA Industries ("**Client**").

In consideration of and for the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser and Client agree as follows:

1.      **Purchase of Accounts**.  Client agrees to sell, assign, transfer and convey to Purchaser all of its existing and future accounts receivable arising from services performed in the regular course of Client's business; i.e., any right to payment from any party for services rendered by or on behalf of Client (the "**Accounts**").  Client shall present all Accounts to Purchaser for purchase, with recourse, and Purchaser shall determine, in its sole discretion, which Accounts it deems acceptable for purchase.  Purchaser may elect to purchase such Accounts it deems to be acceptable, in accordance with the terms and conditions hereof, and Client shall sell, assign, transfer and convey such Accounts to Purchaser.  Client agrees to sell, assign, transfer and convey all of its Accounts to Purchaser, regardless of whether Client fails to present any of such Accounts to Purchaser for purchase as required hereunder.  Client shall execute and deliver to Purchaser a Bill of Sale and Assignment, in the form attached hereto as **EXHIBIT A**, which shall vest in Purchaser all of Client's right, title and interest in said Accounts, together with any undercharges, securities and/or guarantees thereon.  Client shall retain all original paperwork related to the Accounts (i.e., bills of lading, unloading receipts and other documentation supporting the Accounts) until the termination of the Agreement.  Client shall be required to produce original paperwork upon request to Purchaser within 2 business days.

2.      **Purchase Price; Base Fee**.  The purchase price for each Account purchased by Purchaser hereunder shall be the net amount of such Account, less PURCHASER's base fee, which fee shall be an amount equal to 3.0      % of such net amount (the "**Base Fee**").  For purposes of the foregoing, the "net amount" of an Account means the gross amount/face value of the Account less any discount or allowance of any nature offered or provided to the person or entity obligated to pay the Account ("**Account Debtor**").  Upon presentation by Client to Purchaser of an acceptable invoice for an Account approved for purchase by Purchaser (along with all supporting documentation for such Account, including bills of lading, rate confirmation, loading receipts and any other documents substantiating the Account), and provided that no claim or dispute shall then exist with the Account Debtor with respect to the Account, Purchaser will advance to Client the purchase price of the Account, less a security reserve equal to 0.0      % of the net amount of the Account, with a minimum reserve amount of
 0.0                    .  Following Purchaser's receipt of full payment of the invoice for the Account from the Account Debtor, and provided Client shall not otherwise be in default in any respect under this Agreement, Purchaser will remit to Client the security reserve, less any Late Fees pursuant to Section 5 hereof, any other amounts owed by Client to Purchaser, and any and all shipping charges and transactional fees as set forth on **EXHIBIT B** attached hereto and incorporated herein by reference, in complete and full payment for the Account.  Purchaser will account for all Accounts and security reserves separately, but the parties expressly acknowledge and agree that Purchaser will aggregate the security reserves for all Accounts purchased from Client hereunder, and, with respect to those Accounts which Purchaser has received full payment, and provided Client shall not otherwise be in default in any respect under this Agreement,   shall remit such security reserve balances in excess of the minimum reserve requirement (less the applicable deductions, fees and charges), if any, to Client no more frequently than on a monthly basis upon requests from Client, without interest, in full payment for the applicable Accounts, provided also that Client's Account Debtors shall be current on all payments as determined by the applicable invoice/payment terms of each Account.  In the event Client's security reserve balance becomes negative, Purchaser may deduct amounts from future purchases to offset the deficit security reserve or, upon demand by Purchaser, Client shall immediately pay to Purchaser the full amount of the deficit.

3.      **Notice to Account Debtors**.  Client will notify each Account Debtor of the sale of its Account or Accounts to Purchaser and shall place a clear statement or legend, approved by Purchaser, on each such Account invoice, bill of lading, purchase order or statement, stating that such Account has been sold and assigned, and is payable to Purchaser at 11120 Tomahawk Creek Parkway Leawood, KS 66211, or at such other address as Purchaser shall designate in writing.  Such notices shall be in the form attached hereto as **EXHIBIT C**.  All remittances received by Client for payment of Accounts sold to Purchaser are the property of Purchaser, and Client shall hold such proceeds in trust for Purchaser, and shall immediately deliver to Purchaser, in the identical form, all

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

payments received by Client on each such Accounts, together with all documents accompanying the remittance to Client. Client guarantees the timely payment of the monies and amounts represented by the assigned Accounts. Client agrees that it will not attempt to direct any payments on Accounts purchased hereunder other than to Purchaser.

4.   **Power of Attorney**.   Client does hereby irrevocably make, constitute and appoint Purchaser as its attorney-in-fact with full power and authority to act in its stead for the following purposes: (a) invoice or bill for, collect, receive, and deposit to Client's and/or Purchaser's bank accounts any and all amounts which may be due or become due to Client from Account Debtors, and to use Client's name for purposes of billing and collection of any and all amounts due from Account Debtors; (b) receive, accept, open, dispose of and redirect any and all mail addressed to Client; (c) negotiate any checks received in payment of Accounts whether payable to Client or Purchaser or both, and endorse the name of Client on any checks or other evidences of payment or other instruments or documents that may come into the possession of Purchaser on Accounts purchased by Purchaser and on any invoices or other documents or instruments relating to any of the Accounts or relating to any collateral or security hereby granted by Client to Purchaser; (d) in Client's name, or otherwise, demand, make claim for, sue for, collect, grant extensions, compromise, discharge, and get or give releases for any and all monies or funds due or to become due on the Accounts; (e) execute and deliver receipts or acknowledgements to Account Debtors for such amounts due which shall be binding upon Client and Purchaser; (f) notify Account Debtors of the sale of Accounts to Purchaser and notify and instruct Account Debtors, in Client's name, of the address and procedures for making payments on any Accounts that are sold to Purchaser or which constitute collateral hereby granted by Client to Purchaser; (g) take all steps necessary to ensure payment of such amounts and monies due, and do any and all things in Client's name necessary or proper to carry out the purposes intended by this Agreement; (h) file financing statements and all amendments thereto, describing as collateral any or all of the collateral described in Section 6 hereof by any description Purchaser deems appropriate in any jurisdiction or office Purchaser deems appropriate to perfect its security interest in the collateral described in Section 6 hereof; (i) initiate debit or credit entries through the Federal Reserve Automated Clearing House System (ACH) to any deposit account maintained by Client or Purchaser wherever located in order to satisfy any obligations of Client to Purchaser under this Agreement; and (j) make claims under any applicable cargo insurance policy held by or on behalf of Client for any cargo loss, damage, theft, delay or injury to cargo, and direct the insurance proceeds to pay any outstanding amounts due to Account Debtors or Purchaser as a result of the loss, destruction or damage.   It is understood that this power of attorney is coupled with an interest, and is irrevocable until all obligations of Client to Purchaser under this Agreement have been satisfied.   Exercise of the foregoing powers shall be in the sole and absolute discretion of Purchaser, but Purchaser shall have no obligation to exercise any of the foregoing powers.   Nothing contained in this Agreement shall in any way require Purchaser to initiate or become a party to any litigation or other legal proceedings. Purchaser shall not, under any circumstances, or in any event whatsoever, have any liability for any error, omission or delay of any kind occurring in the collection, payment or settlement of any Account or of any instrument received in full or in part payment thereof or in dealing with any lien, security or guaranty of any such Account.   To facilitate Purchaser's ability to exercise the power of attorney with respect to insurance policy claims as described in item (j) above, Client shall execute and deliver to Purchaser an Insurance Power of Attorney, in the form attached hereto as **EXHIBIT D**, which shall grant to Purchaser all of Client's right, power and authority to make claims under Client's cargo insurance policy.

5.   **Late Fees; Full Recourse**.   All Accounts purchased by Purchaser from Client are purchased with full recourse including Purchaser's right to require Client's repurchase of Account(s) as set forth in this Section 5. However, Purchaser has purchased certain credit insurance to insure against certain failures of certain Account Debtors to satisfy the payment Accounts purchased by Purchaser ("Credit Insurance").   To the extent Purchaser chooses to file a claim with the insurer issuing the Credit Insurance, and Purchaser actually receives the amount it is entitled to recover under such Credit Insurance (up to the limit of such Credit Insurance), Accounts of such Account Debtor purchased by Purchaser shall be deemed non-recourse. If Client breaches any warranty or otherwise violates or defaults on any of its obligations hereunder, or if Purchaser reasonably determines at any time that any Account purchased by Purchaser hereunder is uncollectible, or if any Account purchased by Purchaser hereunder is not paid in full within 90 days after the Account invoice date, then upon request by Purchaser, Client shall immediately repurchase such Account(s) from Purchaser for an amount equal to the net amount of such Account(s), less any payments received by Purchaser on such Account(s) from the Account Debtor(s).   Further, Client expressly acknowledges and agrees that the Base Fee pursuant to Section 2 hereof shall increase to            % if an Account invoice remains unpaid after            days, and shall increase again to            % if an invoice remains unpaid for an additional            day period.

2

*Clerk of the District Court, Johnson County Kansas*
*10/10/19   04:01pm HS*

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

The incremental increases in the Base Fee described above in this Section 5 shall be referred to herein as "Late Fees". Any security reserve held by Purchaser for such Account shall be released only in accordance with Section 2 hereof, and Purchaser shall, in any event, be entitled to and shall retain its Base Fee and all Late Fees for the Account as set forth herein.

6.    **Security Interest**.   Client hereby grants to Purchaser as collateral, to secure all of the debts, liabilities and obligations of Client to Purchaser under this Agreement, including all costs and expenses incurred by Purchaser in connection with the enforcement of its rights under this Agreement, a continuing security interest in the following property of Client: (a) all Accounts, wherever located or situated, and whether now existing or arising in the future, and whether now owned or at any time in the future acquired by Client; all guaranties and security for such Accounts; all of Client's rights and interest in the goods giving rise to such Accounts, and the rights associated with or related or pertaining to such goods, including without limitation the right of stoppage in transit and any and all related insurance, any items substituted therefor as replacements and all additions thereto; (b) all of Client's chattel paper, instruments, general intangibles, securities, contract rights, associated with or related to the Accounts; (c) all proceeds of any of the foregoing Accounts, and all rights and interests and monies due or becoming due on such Accounts; and (d) all other personal property in which Client has an interest, now or hereafter existing or acquired, and wheresoever located, tangible or intangible, including, but not limited to, all present and hereafter existing or acquired vehicles, equipment, tools, goods, inventory, furniture, fixtures, contract rights, chattel mortgages, deeds of trust, stocks, bonds, certificates of deposit, bank accounts, security deposits, intellectual property and other general intangibles. Upon request by Purchaser, Client shall execute a Security Agreement in a form provided by Purchaser evidencing the foregoing security interest. Purchaser may file financing statements and amendments thereto describing as the collateral any or all of the foregoing collateral by any description Purchaser deems appropriate in any jurisdiction or office Purchaser deems appropriate to perfect its security interest in foregoing collateral. In the event of Client's breach of any warranty made in this Agreement, Client's failure to observe or perform any of the provisions or obligations of this Agreement or Client's (including Client's affiliates) default of any other written agreement with Purchaser or Purchaser's affiliates as defined in section 17 of the Agreement, Client shall be in default, and Purchaser may enforce payment and exercise any and all of the rights and remedies provided by Article 9 of the Uniform Commercial Code. In addition, upon default by Client, Purchaser shall also have the right to take all actions necessary to collect the Accounts directly from the Account Debtors. Without limiting the foregoing, Client agrees that if Client fails to present any of Client's Accounts to Purchaser for purchase as required hereunder, then Client shall be in default and shall owe to Purchaser liquidated damages for such default in an amount equal to the Base Fee which would have otherwise been payable hereunder with respect to such Account(s).

7.    **Personal Guaranty; Background Check**.   To induce Purchaser to enter into this Agreement and to purchase the Accounts from Client, and as additional security for all of the debts, liabilities and obligations of Client to Purchaser under this Agreement, one or more owners of Client shall execute the Personal Guaranty form attached hereto as **EXHIBIT E**, pursuant to which said owner(s) shall unconditionally guaranty the obligations of Client under this Agreement. Such owner(s) must also consent to a personal credit check and comprehensive background investigation.

8.    **Term and Termination**.   The term of this Agreement shall commence as of the day and year first above written, and shall continue for an initial term of one year. Thereafter, this Agreement shall automatically renew for additional consecutive one year terms, unless either party provides the other party with written notice of its intent not to renew at least 90 days prior to expiration of the then current term. Notwithstanding the stated term hereof, Purchaser may terminate this Agreement immediately upon written notice thereof to Client in the event Client breaches this Agreement or in the event of the insolvency of Client or the filing of a petition in bankruptcy by or against Client. Further, notwithstanding anything herein to the contrary, Purchaser may terminate this Agreement without cause by providing Client with at least 30 days prior written notice thereof. Expiration or earlier termination of this Agreement shall not affect, waive or release the rights and obligations of the parties hereunder with respect to any Accounts purchased by Purchaser prior to such expiration or termination, and Client shall remain liable to Purchaser for all amounts and monies as may be owed to Purchaser under the terms and conditions of this Agreement. Upon termination, any security reserve, and any other funds or monies from any source whatsoever which Purchaser would otherwise owe to Client, may be retained by Purchaser until such time as all obligations and debts of Client to Purchaser have been fully satisfied, and Purchaser's security interest provided in Section 6 hereof shall continue until all obligations of Client to Purchaser are paid in full. Purchaser shall have the right, in its sole discretion, to set off against the security reserve and any other sums owing to Client by Purchaser all obligations and

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

debts of Client to Purchaser, including any debts of Client or Client's affiliates (as defined in Section 17) under other agreements. All of Client's covenants, warranties and agreements under this Agreement made to Purchaser, as well as Purchaser's security interest pursuant to Section 6 above, shall continue in full force and effect until all Accounts purchased hereunder and all debts and obligations of Client to Purchaser are paid in full.

9.   **Representations and Warranties**. Client represents, covenants, warrants and agrees as follows:

(a)   If Client is a corporation or limited liability company, that it is duly organized, existing and in good standing under the laws of the state of its incorporation or organization, and that the execution, delivery and performance of this Agreement are in every respect within its corporate/company powers and have been duly authorized by appropriate corporate/membership action.

(b)   That this Agreement, when duly executed and delivered by Client and Purchaser, will constitute a legal, valid and binding agreement of Client fully enforceable in accordance with its terms and conditions.

(c)   Client's address set out in Section 12 of this Agreement is the address of Client's principal office and its sole place of business. Client shall give Purchaser immediate written notice of any change in the location of its principal office, the addition of any new place or places of business and their addresses, any name change or the addition of any name under which Client does business, or any change in the nature or status of Client's business or operations.

(d)   Client is registered with the U.S. Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA"), and has a valid USDOT Number and the requisite operating authority from the FMCSA to conduct its motor carrier operations, in accordance with the requirements of the Federal Motor Carrier Safety Regulations.

(e)   As to each Account purchased by Purchaser under this Agreement: (1) the Account is not yet past due, arose in the ordinary course of Client's business and represents a bona fide completed transaction; (2) Client owns the Account free and clear of all liens, security interests and/or any other encumbrance, Client's ownership of and right and title to the Account is absolute and subject to no assignment or claim, and Client shall not assign, grant a security interest in or encumber the Account contrary to this Agreement; (3) the Account, as shown on Client's books and records, and on any invoices, bills of lading or statements, delivered to Purchaser is a legally enforceable debt owed by Account Debtor to Client in its full face amount, and is not contingent upon the fulfillment of any condition whatsoever; (4) no partial payment has been made by anyone on such Account; (5) no set off, credit, allowance, adjustment, counterclaim or defense to such Account exists or will exist and no agreement has been made or will be made with any person or entity under which any deduction or discount may be claimed on such Account; (6) the Account is payable not more than 30 days from the date of assignment of the Account to Purchaser.

(f)   Client shall execute any and all financing statements, Uniform Commercial Code forms or other documents or instruments which Purchaser deems necessary and/or appropriate to protect its interest under this Agreement.

(g)   Client shall indemnify, defend and hold harmless Purchaser from and against any and all misrepresentations or breaches of warranty or other defaults hereunder by Client; from any dispute or claim resulting in liability, loss, expense, cost or attorneys' fees caused by or arising out of the rejection of any work performed or services rendered by Client; or from any alleged claim, dispute, action, defense or set off of every kind and nature asserted by any Account Debtor.

(h)   Client shall not, without the express written consent of Purchaser, release, compromise, settle or adjust any Account purchased hereunder, or grant any discounts, allowances or credits thereon.

The representations, covenants and warranties set forth in this Section 9 shall survive expiration or termination of this Agreement, regardless of reason.

4

*Clerk of the District Court, Johnson County Kansas*
*10/10/19 04:01pm HS*

10.     **Recordkeeping**.  All of Client's books, accounts, ledgers, correspondence, records and papers pertaining to all of the Accounts and Client's business shall be accurately and properly prepared and maintained by Client and shall disclose the sale of Accounts purchased by Purchaser.  All such books, ledgers, accounts, records, correspondence and papers shall be made available by Client at all reasonable times for Purchaser's inspection, audit and copying.  Client shall, upon the request of Purchaser, furnish Purchaser with financial statements, including income statements and balance sheets showing Client's financial condition.

11.     **Attorneys Fees**.  If Purchaser retains the services of an attorney to enforce any obligation of Client to Purchaser under this Agreement, Purchaser shall be entitled to recover from Client all attorneys fees, court costs and expenses, regardless of whether or not an action is commenced.

12.     **Notice**.  Notices under this Agreement shall be in writing and mailed postage prepaid, registered or certified mail, return receipt requested, or sent by overnight delivery service, or by facsimile transmission to the recipient's facsimile machine, addressed to the addresses set forth below, or to such other addresses as either party notifies the other in writing.  All such notices shall be effective upon receipt if delivered by hand or facsimile or overnight delivery service; otherwise upon three (3) business days after the notice is placed in the U.S. Mail. Addresses for notices are as follows:

If to PURCHASER:                                    If to Client:

                                                    RSA Industries
                                                    Rene Carbonell
MHC Commercial Finance
11120 Tomahawk Creek Parkway
Leawood, KS 66211                                   29980 FM 2978 RD APT 2206
Fax: (816) 242-6249                                 Magnolia                    TX   77354

13.     **Governing Law**.  This Agreement is accepted and made in the state of Kansas and this Agreement and the rights of the parties hereunder shall be interpreted under and governed as to construction, enforcement and validity by the laws of the state of Kansas.  Purchaser and Client agree that any legal suit, action or proceeding arising out of or related to this Agreement shall be instituted, heard and resolved solely and exclusively in a State or Federal Court in or for Johnson County, Kansas.  Purchaser and Client submit to the jurisdiction of the State and Federal Courts for Johnson County, Kansas for the purpose of deciding any questions, disputes or causes, arising under this Agreement.  In the event that any one or more of the provisions in this Agreement should be held by any court of competent jurisdiction to be unenforceable, the holding or decision shall not affect or impair any of the other provisions of this Agreement.

14.     **Waiver**.  No delay or omission on the part of Purchaser in enforcing or exercising any right hereunder shall operate as a waiver of such right or any other right.  The waiver by Purchaser of the breach by Client of any provision of this Agreement shall not be construed as a waiver of any other breach.  No waiver or modification of the Agreement shall be enforceable or chargeable against Purchaser unless it is in writing, signed by Purchaser and delivered by Purchaser to Client.

15.     **Miscellaneous Provisions**.  This Agreement shall binding upon and inure to the benefits of the parties hereto and their respective successors and assigns; provided, however, that this Agreement may not be assigned by Client without the prior written consent of Purchaser.  The waiver, compromise, discharge, extension or release by Purchaser of any duty or obligation of any Account Debtor shall not reduce, diminish, limit or restrict in any way Client's obligations and liabilities to Purchaser.  Duties and obligations imposed by this Agreement and rights and remedies available hereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.  The parties agree to do all acts and things, and to make, execute and deliver such written instruments, as shall from time to time be reasonably required to carry out the terms and provisions of this Agreement.  All headings, titles and section captions are inserted in this Agreement for convenience of reference only, are descriptive only and shall not be deemed or construed to add to, detract from or otherwise modify the meaning of the sections or provisions hereof.  This Agreement constitutes the exclusive statement of the agreement of the parties with respect to the subject matter hereof, and this Agreement supersedes and replaces all prior and contemporaneous agreements, discussions and representations, whether written or oral, relating to the subject matter hereof.  The terms and provisions of this Agreement can only be amended, altered, changed, modified, supplemented or waived pursuant to a writing signed by the parties hereto.  Client consents to

Contract Number:  00000204
1138778v5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

contract electronically with Purchaser for purposes of this Agreement and any subsequent agreement between Client and Purchaser or Purchaser's affiliates and understands that Client is entering into a legal agreement by agreeing to this Agreement and intends to be legally bound by such agreement. Any termination of Client's consent to conduct business electronically shall not affect the legal enforceability of any Agreement entered into prior to such withdrawal of consent. This Agreement may be executed in one or more counterparts and each counterpart with a mark demonstrating intent to be bound by the terms thereof, whether an original handwritten signature, facsimile, electronic acknowledgement, or any other mark accepted to bind parties to an agreement under applicable law is considered an original and all counterparts shall constitute one and the same instrument.

16. **Authorization for Certificates of Insurance**. As a material condition of this Agreement, Client agrees to execute the authorization form attached hereto as **EXHIBIT F**, pursuant to which Client authorizes its insurance carriers to provide to Purchaser, upon its request, a list of all customers/shippers to whom/which such insurance carriers issued certificates of insurance for Client's insurance coverage and/or copies of all certificates of insurance issued by such insurance carriers to customers/shippers relating to Client's insurance coverage. Such authorization shall be irrevocable during term of this Agreement.

17. **Other Agreements**. If Client is party to one or more conditional sale contracts, equipment purchase agreements, lease agreements, chattel mortgages, security agreements, factoring services agreements, notes and/or other loan agreements with Purchaser or an affiliate of Purchaser, and Client desires to directly pay Client's obligations thereunder to Purchaser or Purchaser's affiliate, on Client's behalf, from available funds in Client's security reserve balances and/or from proceeds of the Accounts (after payment of fees and charges owed to Purchaser hereunder), then Client must make a written request for such direct payment. Accordingly, Client hereby authorizes Purchaser to pay Client's obligations under any such agreements from available funds in Client's security reserve balances, in excess of minimum reserve requirements, and/or from proceeds of the Accounts (after payment of all fees and charges owed to Purchaser hereunder) upon the written request of Client. For purposes of this Section 17, an "affiliate" shall include any person or entity that, directly or indirectly through one or more intermediaries, is in control of, is controlled by, or is under direct or indirect common control with Purchaser.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers, effective as of the day and year first above written.

MHC Financial Services, Inc.:                          RSA Industries

**Purchaser**                                          **Client**

By _____                              By _____
Name  Joe Moran                                        Name  Rene Carbonell
Title  Director of Commercial Finance                  Title  Owner

                                                       By _____
                                                       Name _____
                                                       Title _____

                                                       By _____
                                                       Name _____
                                                       Title _____

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

# EXHIBIT A

## BILL OF SALE AND ASSIGNMENT

**FOR VALUE RECEIVED**, the receipt and sufficiency of which is hereby acknowledged, RSA Industries ("**Assignor**"), does hereby grant, sell, assign, transfer and convey unto MHC Financial Services, Inc., a Missouri corporation ("**Purchaser**"), its successors and assigns, the accounts receivable arising from services performed in the regular course of Assignor's business, as described on the schedule of accounts attached hereto and/or evidenced by the invoices attached hereto, which are incorporated herein by this reference (the "**Accounts**").

**TO HAVE AND TO HOLD** the same unto Purchaser, its successors and assigns, forever, Assignor hereby representing and warranting that it conveys good and merchantable title to the Accounts, free and clear of all liens, encumbrances, and security interests, and that it will warrant and defend the title to the Accounts unto Purchaser, its successors and assigns, forever against the claims and demands of all persons whomsoever.

**IN WITNESS WHEREOF**, Assignor has executed this Bill of Sale and Assignment effective as of 4/24/2019 .

"Assignor":

By _____
Name Rene Carbonell
Title Owner

By _____
Name _____
Title _____

By _____
Name _____
Title _____

7

Contract Number: 00000204
1138778v5

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

## EXHIBIT B

### Transaction Fees

- Transaction Fees (ACH and/or Fuel Card)      $ 5.0

- Minimum Invoice Fee                          $ 20.0

### One Time Fees and Charges

- UCC Filing Fee                               $ 100.0

### Additional Fees and Charges
### *note these charges only occur if you ask for these services*

- Bank Wire Fee                                $ 25.0

- AM/PM Rush Bank Wire Fee                      $  50.00

- Non Sufficient Funds Fee (per check)          $  50.00

- Check deposited by Client
  belonging to Purchaser                       $  150.00      per Invoice Paid


Client expressly acknowledges and agrees that such fees and charges are subject to change by Purchaser from time to time, and that certain additional fees/charges may be assessed based on increased cost to Purchaser and/or third party charges. In the event of any such change, Purchaser will provide Client written notice thereof, and the new fee schedule shall be incorporated herein by this reference. The foregoing is expressly agreed to and accepted by Client:

By _____
      DocuSigned by:
      37D578C58E844FE...

Name   Rene Carbonell _____

Title   Owner _____


By _____

Name _____

Title _____


By _____

Name _____

Title _____

8

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

**EXHIBIT C**

## NOTICE OF ASSIGNMENT

TO:[                                                         ]

ATTN: **ACCOUNTS PAYABLE MANAGER**                    E-MAIL:

REGARDING: RSA Industries

MC#: DOT 3221611                                  DATE: 4/24/2019

The purpose of this Notice of Assignment is to inform you that the above-named carrier has assigned all of its current and future accounts receivable and the proceeds thereof to Purchaser. Accordingly, Purchaser now owns ALL of above-named carrier's accounts receivable and has the sole and exclusive right to collect and retain the same. The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. You may have received, or will be receiving, invoices for services rendered by this carrier. **Please be advised that ALL such invoices (past, present, and future) must be paid directly to Purchaser as indicated below:**

**Payments by mail:**                    **Electronic Payments:**

                      Account: 987 222 4221

      Murphy Hoffman Company              Routing: 101 000 695

      P.O. Box 874091                    Reference: DOT 3221611

      Kansas City, MO 64187              *Please submit supporting documents*

                      *via email to:*

                          Email: ACH.payments@mhc.com

Your compliance with this assignment is authorized and directed by the above-named carrier, as evidenced by the duly authorized signature of the carrier below. This assignment can only be revoked in writing signed by both Purchaser and the above-named carrier. In the event there is any claim or dispute that may affect payment of any invoice, or if any person or entity other than Purchaser attempts to collect or claims any right to any such invoices/accounts receivable, then please notify Purchaser immediately, and do not make any payment on such accounts to any other party (including the above-named carrier). **Payment to the carrier or any other party will not discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.**

Your cooperation with this Notice of Assignment and timely payment of all such invoices as directed will be greatly appreciated, and will help to avoid duplicate payments and/or legal action. Although all funds and payments will be redirected to Purchaser, please continue to send all 1099's directly to the carrier. Please make the proper notations on your ledger. Lastly, by sending payment to Purchaser you acknowledge invoices are not subject to any claims or defenses or right to offset you may have against the carrier. Thank you.

***IF YOU HAVE QUESTIONS OR WOULD LIKE ADDITIONAL INFORMATION PLEASE CONTACT US AT 844-891-3509.***

**Purchaser**                                    The foregoing is authorized and directed
**MHC Financial Services, Inc.**                 by the above-named carrier:

Joe Moran                                        By _____
                                                 Name Rene Carbonell
                                                 Title Owner _____

                                                 By _____
                                                 Name _____
                                                 Title _____

Contract Number: 00000204
1138778v5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

# EXHIBIT D

## Insurance Power of Attorney

STATE OF KANSAS        )
                         ) ss.

COUNTY OF JOHNSON    )

---

Know all men by these presents, that I  Rene Carbonell  , the undersigned, of  County, Magnolia  , TX   do hereby make, constitute and appoint Purchaser, a Missouri corporation, my true and lawful attorney-in-fact for me and in my name, place and stead, and on my behalf, for the specific purpose of making claims under any cargo insurance policy held by or on behalf of me or my trucking company known as  RSA Industries  .  Purchaser shall have the power to make a claim or exercise any rights, options or benefits under any such insurance policy for any loss, damage, theft, delay or injury to cargo related to accounts receivable that have been purchased by Purchaser for services rendered by or on behalf of me or my company.  Further, Purchaser shall have the power to direct and/or assign any insurance proceeds resulting from such claim to satisfy any outstanding obligations to account debtors which may exist as a result of any loss, damage, theft, delay or injury to cargo.

The rights, powers and authority of said attorney-in-fact granted in this instrument shall commence and be in full force and effect on the date hereof and such rights, powers and authorities shall remain in full force and effect for the purpose herein specified until all of my obligations to Purchaser under that certain Factoring Services Agreement dated  4/24/2019   have been satisfied.

Dated: 4/24/2019

By _____

Name  Rene Carbonell

Title  Owner

Contract Number:  00000204
1138778v5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

## EXHIBIT D

### Insurance Power of Attorney

STATE OF KANSAS          )
                                ) ss.
COUNTY OF JOHNSON     )

_____

         Know all men by these presents, that I                                                   , the undersigned, of                                   County,                         ,     do hereby make, constitute and appoint Purchaser, a Missouri corporation, my true and lawful attorney-in-fact for me and in my name, place and stead, and on my behalf, for the specific purpose of making claims under any cargo insurance policy held by or on behalf of me or my trucking company known as

_____.     Purchaser shall have the power to make a claim or exercise any rights, options or benefits under any such insurance policy for any loss, damage, theft, delay or injury to cargo related to accounts receivable that have been purchased by Purchaser for services rendered by or on behalf of me or my company.  Further, Purchaser shall have the power to direct and/or assign any insurance proceeds resulting from such claim to satisfy any outstanding obligations to account debtors which may exist as a result of any loss, damage, theft, delay or injury to cargo.

         The rights, powers and authority of said attorney-in-fact granted in this instrument shall commence and be in full force and effect on the date hereof and such rights, powers and authorities shall remain in full force and effect for the purpose herein specified until all of my obligations to Purchaser under that certain Factoring Services Agreement dated                              have been satisfied.

Dated:

                                             By  _____

                                           Name  _____

                                           Title  _____

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

# EXHIBIT E

## PERSONAL GUARANTY

For valuable consideration and to induce MHC Financial Services, Inc. ("Purchaser") to enter into that certain Factoring Services Agreement dated          4/24/2019                      (the "Agreement") with RSA Industries                                                                                 ("Client"), I/we, the undersigned Guarantor(s), do hereby unconditionally guarantee to Purchaser, its successors and assigns, the full, prompt and complete performance by Client of all of the provisions, conditions, covenants and agreements contained in the Agreement, including the full and complete payment of all monies that became due thereunder to Purchaser by Client, and do hereby waive all notice of default by Client and notice of acceptance of this guaranty by Purchaser, and do hereby consent to any extension of time that may be given by Purchaser to Client of time for payment or performance.  If, at any time, Client shall fail to timely pay any amounts owed to Purchaser under the Agreement or otherwise fail to perform any of its obligations under the Agreement, then the undersigned shall promptly pay the same or perform the same in the place and stead of Client.  This guaranty is not limited to any particular period of time, but shall continue until all of the terms, covenants, and conditions of the Agreement have been fully and completely performed by Client, and the undersigned shall not be released of any obligation or liability hereunder so long as there is any claim of Purchaser against Client arising out of or relating to the Agreement that has not been settled or discharged in full.  The undersigned waive(s) any right to require Purchaser to proceed against Client, any account debtors or customers of Client, or any other person, debtor or guarantor, or to proceed against or exhaust any security or pursue any other remedy in Purchaser's power.  Whether or not a suit is initiated, the undersigned shall pay all reasonable attorneys' fees and all other costs and expenses incurred by Purchaser in enforcing this guaranty and in any actions or proceedings arising out of or relating to this guaranty.  This guaranty shall be governed and construed in accordance with the laws of the state of Kansas.  The undersigned hereby consents to the sole and exclusive jurisdiction of any state or Federal court within the state of Kansas in connection with the enforcement of this guaranty.

Guarantor(s):

_____
[Signature]
Rene Carbonell
_____
[Printed Name]
4/24/2019
_____
[Date]


_____
[Signature]

_____
[Printed Name]

_____
[Date]


_____
[Signature]

_____
[Printed Name]

_____
[Date]

12

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

# EXHIBIT F

## Authorization for Certificates of Insurance

The undersigned Client of Purchaser hereby expressly authorizes any and all of its liability and cargo insurance carriers to provide to Purchaser, upon its request, a list of all customers/shippers to whom/which such insurance carriers issued certificates of insurance for the undersigned Client's insurance coverage and/or copies of all certificates of insurance issued by such insurance carriers to customers/shippers relating to the undersigned Client's insurance coverage.  Such authorization shall be effective from and after the date below.

Authorized by Client:

By _____

Name  Rene Carbonell

Title  Owner

Date  4/24/2019


By _____

Name _____

Title _____

Date _____


By _____

Name _____

Title _____

Date _____

13

Contract Number:  00000204
1138778v5

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

EXHIBIT

**D**

EXHIBIT C

## NOTICE OF ASSIGNMENT

TO:[                                                      ]

ATTN: **ACCOUNTS PAYABLE MANAGER**                    E-MAIL:

REGARDING: RSA Industries

MC#: DOT 3221611                                         DATE: 4/24/2019

The purpose of this Notice of Assignment is to inform you that the above-named carrier has assigned all of its current and future accounts receivable and the proceeds thereof to Purchaser.  Accordingly, Purchaser now owns ALL of above-named carrier's accounts receivable and has the sole and exclusive right to collect and retain the same.  The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. You may have received, or will be receiving, invoices for services rendered by this carrier.  **Please be advised that ALL such invoices (past, present, and future) must be paid directly to Purchaser as indicated below:**

| Payments by mail: | Electronic Payments: |
|---|---|
| Murphy Hoffman Company<br>P.O. Box 874091<br>Kansas City, MO 64187 | Account:  987 222 4221<br>Routing:  101 000 695<br>Reference: DOT 3221611<br>*Please submit supporting documents*<br>*via email to:*<br>Email: ACH.payments@mhc.com |

Your compliance with this assignment is authorized and directed by the above-named carrier, as evidenced by the duly authorized signature of the carrier below.  This assignment can only be revoked in writing signed by both Purchaser and the above-named carrier.  In the event there is any claim or dispute that may affect payment of any invoice, or if any person or entity other than Purchaser attempts to collect or claims any right to any such invoices/accounts receivable, then please notify Purchaser immediately, and do not make any payment on such accounts to any other party (including the above-named carrier).  **Payment to the carrier or any other party will not discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.**

Your cooperation with this Notice of Assignment and timely payment of all such invoices as directed will be greatly appreciated, and will help to avoid duplicate payments and/or legal action.  Although all funds and payments will be redirected to Purchaser, please continue to send all 1099's directly to the carrier. Please make the proper notations on your ledger. Lastly, by sending payment to Purchaser you acknowledge invoices are not subject to any claims or defenses or right to offset you may have against the carrier. Thank you.

***IF YOU HAVE QUESTIONS OR WOULD LIKE ADDITIONAL INFORMATION PLEASE CONTACT US AT 844-891-3509.***

Purchaser
**MHC Financial Services, Inc.**

Joe Moran

The foregoing is authorized and directed
by the above-named carrier:

By _____

Name Rene Carbonell _____

Title Owner _____

By _____

Name _____

Title _____

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

Contract Number: 00000204
1138778v5

**Statement of Account As of July 25, 2019**



**Please Remit All Payments To:**

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc                          Jose Ramos dba M&J Logistics
410 Terry Avenue N                            302 Ave C
Seattle, WA 98109                             Richmond, TX 77406
Attention: Book Keeper

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| AMZN-1HT5 | 6/27/2019 | 116CF1HT5 | 845.57 | 29 | 845.57 |
| AMZN-32KF | 6/28/2019 | 111NM32KF | 682.10 | 28 | 682.10 |
| AMZN-3C2N | 6/28/2019 | 1147G3C2N | 2,588.64 | 28 | 2,588.64 |
| AMZN-3T8Y | 6/28/2019 | 116PG3T8Y | 2,892.03 | 28 | 2,892.03 |
| AMZN-4KXX | 6/27/2019 | 1H5V4KXX | 845.57 | 29 | 845.57 |
| AMZN-59HZ | 6/27/2019 | 115ZK59HZ | 1,409.02 | 29 | 1,409.02 |
| AMZN-5CH9 | 6/28/2019 | 115NT5CH9 | 2,644.56 | 28 | 2,644.56 |
| AMZN-5WBF | 6/27/2019 | 113MY5WBF | 845.57 | 29 | 845.57 |
| AMZN-665F | 7/1/2019 | 112PN665F | 1,278.82 | 25 | 1,278.82 |
| AMZN-69VZ | 6/27/2019 | 111j369vz | 845.57 | 29 | 845.57 |
| AMZN-7D4D | 7/1/2019 | 114587D4D | 965.12 | 25 | 965.12 |
| AMZN-7KHQ | 6/27/2019 | 114K77KHQ | 957.91 | 29 | 957.91 |
| AMZN-CJMN | 6/28/2019 | 11156CJMN | 2,892.03 | 28 | 2,892.03 |
| AMZN-CJMW | 7/1/2019 | 114CKCJMW | 901.57 | 25 | 901.57 |
| AMZN-F1M8 | 6/28/2019 | 114QPF1M8 | 874.16 | 28 | 874.16 |
| amzn-gx1h | 6/28/2019 | 116GBGX1H | 2,892.03 | 28 | 2,892.03 |
| amzn-hdks | 6/28/2019 | 113VKHDKS | 2,892.03 | 28 | 2,892.03 |
| amzn-htzp | 7/1/2019 | 114QQHTZP | 1,278.82 | 25 | 1,278.82 |
| amzn-jmgw | 6/27/2019 | 112BDJMGW | 1,409.02 | 29 | 1,409.02 |
| AMZN-M584 | 6/28/2019 | 11427M584 | 2,588.64 | 28 | 2,588.64 |
| AMZN-MBR3 | 7/1/2019 | 116F7MBR3 | 669.12 | 25 | 669.12 |
| amzn-mwpp | 6/28/2019 | 115TIMWPP | 2,561.55 | 28 | 2,561.55 |
| AMZN-NGT9 | 6/27/2019 | 1156LNGT9 | 5,102.78 | 29 | 5,102.78 |
| AMZN-Q28Y | 6/28/2019 | 11411Q28Y | 2,421.07 | 28 | 2,421.07 |
| amzn-qbdi | 7/1/2019 | 1157QQBD1 | 892.71 | 25 | 892.71 |
| AMZN-QC2K | 7/1/2019 | 115BKQC2K | 707.77 | 25 | 707.77 |
| amzn-qhwv | 7/1/2019 | 112F3QHWV | 871.98 | 25 | 871.98 |

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

**Statement of Account As of July 25, 2019**

**Please Remit All Payments To:**

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc                          Jose Ramos dba M&J Logistics
410 Terry Avenue N                            302 Ave C
Seattle, WA 98109                             Richmond, TX 77406
Attention: Book Keeper

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| | | | | | **Continued From Previous Page** |
| amzn-stbd | 6/27/2019 | 1133JSTBD | 2,993.21 | 29 | 2,993.21 |
| AMZN-T23K | 6/27/2019 | 114T2T23K | 845.57 | 29 | 845.57 |
| amzn-tybi | 7/1/2019 | 112GMTYBI | 1,278.82 | 25 | 1,278.82 |
| AMZN-VKZ4 | 7/1/2019 | 116N9VKZ4 | 624.71 | 25 | 624.71 |
| AMZN-VR9F | 6/27/2019 | 1135HVR9F | 957.91 | 29 | 957.91 |
| AMZN-VSJ1 | 6/28/2019 | 113KSVSJ1 | 2,993.21 | 28 | 2,993.21 |
| AMZN-WH3R | 6/27/2019 | 115KFWH3R | 2,106.53 | 29 | 2,106.53 |
| AMZN-WLG5 | 6/27/2019 | 112QZWLG5 | 845.57 | 29 | 845.57 |
| amzn-xcrd | 6/27/2019 | 112SVXCRD | 743.35 | 29 | 743.35 |
| amzn-xfrx | 6/27/2019 | 114M8XFRX | 1,409.02 | 29 | 1,409.02 |
| AMZN-Y5RX | 6/27/2019 | 1142NY5RX | 2,892.03 | 29 | 2,892.03 |
| AMZN-Z5XP | 7/1/2019 | 113LWZ5XP | 901.57 | 25 | 901.57 |

Total Due                                                                          **64,347.26**

***PLEASE INCLUDE LOAD NUMBER WITH REPLY***
In order for us to better assist you, please direct all questions to: funding.mhcfs@mhc.com or (844)891-3509

DocuSign Envelope ID: 53242025-FD4B-45CD-8917-10A6525184A7

EXHIBIT C

## NOTICE OF ASSIGNMENT

TO:[                                              ]

ATTN: **ACCOUNTS PAYABLE MANAGER**          E-MAIL:

REGARDING: RSA Industries

MC#: DOT 3221611                              DATE: 4/24/2019

The purpose of this Notice of Assignment is to inform you that the above-named carrier has assigned all of its current and future accounts receivable and the proceeds thereof to Purchaser.  Accordingly, Purchaser now owns ALL of above-named carrier's accounts receivable and has the sole and exclusive right to collect and retain the same.  The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. You may have received, or will be receiving, invoices for services rendered by this carrier.  **Please be advised that ALL such invoices (past, present, and future) must be paid directly to Purchaser as indicated below:**

| Payments by mail: | Electronic Payments: |
|---|---|
| Murphy Hoffman Company | Account:  987 222 4221 |
| P.O. Box 874091 | Routing:  101 000 695 |
| Kansas City, MO 64187 | Reference: DOT 3221611 |
| | *Please submit supporting documents via email to:* |
| | Email: ACH.payments@mhc.com |

Your compliance with this assignment is authorized and directed by the above-named carrier, as evidenced by the duly authorized signature of the carrier below.  This assignment can only be revoked in writing signed by both Purchaser and the above-named carrier.  In the event there is any claim or dispute that may affect payment of any invoice, or if any person or entity other than Purchaser attempts to collect or claims any right to any such invoices/accounts receivable, then please notify Purchaser immediately, and do <u>not</u> make any payment on such accounts to any other party (including the above-named carrier).  **Payment to the carrier or any other party will not discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.**

Your cooperation with this Notice of Assignment and timely payment of all such invoices as directed will be greatly appreciated, and will help to avoid duplicate payments and/or legal action.  Although all funds and payments will be redirected to Purchaser, please continue to send all 1099's directly to the carrier. Please make the proper notations on your ledger. Lastly, by sending payment to Purchaser you acknowledge invoices are not subject to any claims or defenses or right to offset you may have against the carrier. Thank you.

***IF YOU HAVE QUESTIONS OR WOULD LIKE ADDITIONAL INFORMATION PLEASE CONTACT US AT 844-891-3509.***

| **Purchaser** | The foregoing is authorized and directed by the above-named carrier: |
|---|---|
| **MHC Financial Services, Inc.** | |
| | By _____ |
| | Name Rene Carbonell |
| | Title Owner _____ |
| | |
| | By _____ |
| | Name _____ |
| | Title _____ |

Contract Number: 00000204
1138778v5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

**EXHIBIT C**

## NOTICE OF ASSIGNMENT

TO:[                                                          ]

ATTN: **ACCOUNTS PAYABLE MANAGER**          E-MAIL:

REGARDING: Jose Ramos DBA M&J Logistics

MC#:  3234205                                        DATE: 5/8/2019

The purpose of this Notice of Assignment is to inform you that the above-named carrier has assigned all of its current and future accounts receivable and the proceeds thereof to Purchaser.  Accordingly, Purchaser now owns ALL of above-named carrier's accounts receivable and has the sole and exclusive right to collect and retain the same.  The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. You may have received, or will be receiving, invoices for services rendered by this carrier.  **Please be advised that ALL such invoices (past, present, and future) must be paid directly to Purchaser as indicated below:**

| Payments by mail: | Electronic Payments: |
|---|---|
| Murphy Hoffman Company | Account:  987 222 4221 |
| P.O. Box 874091 | Routing:  101 000 695 |
| Kansas City, MO 64187 | Reference: 3234205 |
| | *Please submit supporting documents via email to:* |
| | Email: ACH.payments@mhc.com |

Your compliance with this assignment is authorized and directed by the above-named carrier, as evidenced by the duly authorized signature of the carrier below.  This assignment can only be revoked in writing signed by both Purchaser and the above-named carrier.  In the event there is any claim or dispute that may affect payment of any invoice, or if any person or entity other than Purchaser attempts to collect or claims any right to any such invoices/accounts receivable, then please notify Purchaser immediately, and do <u>not</u> make any payment on such accounts to any other party (including the above-named carrier).  **Payment to the carrier or any other party will <u>not</u> discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.**

Your cooperation with this Notice of Assignment and timely payment of all such invoices as directed will be greatly appreciated, and will help to avoid duplicate payments and/or legal action.  Although all funds and payments will be redirected to Purchaser, please continue to send all 1099's directly to the carrier. Please make the proper notations on your ledger. Lastly, by sending payment to Purchaser you acknowledge invoices are not subject to any claims or defenses or right to offset you may have against the carrier. Thank you.

***IF YOU HAVE QUESTIONS OR WOULD LIKE ADDITIONAL INFORMATION PLEASE CONTACT US AT 844-891-3509.***

| | |
|---|---|
| **Purchaser** | The foregoing is authorized and directed by the above-named carrier: |
| **MHC Financial Services, Inc.** | |
| *DocuSigned by:* Joe Moran | By _Jose Ramos_____ |
| | Name _Jose Ramos_____ |
| | Title _Owner_____ |
| | By _____ |
| | Name _____ |
| | Title _____ |

9

Contract Number: 00000219
1138778v5

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*



**SEIGFREID BINGHAM**
A PROFESSIONAL CORPORATION

2323 Grand Boulevard, Suite 1000
Kansas City, Missouri 64108
816.421.4460  F: 816.474.3447
www.sb-kc.com

Mark U.Opara
mopara@sb-kc.com

July 29, 2019



EXHIBIT
**F**

*SENT BY EMAIL AND CERTIFIED US MAIL:*

Amazon Logistics, Inc.
Attn: Amanda Guereca & Monica Ruiz
410 Terry Ave. N.
Seattle, WA, 98126
Email: aprelay@amazon.com

Re:   $136,769.90 owed by Amazon Logistics, Inc. ("Amazon") to MHC Financial
Services Inc. ("MHCFS")

Dear Sir or Madam:

This law firm represents MHCFS. We are contacting you with respect to approximately 180 unpaid invoices owed by Amazon to MHCFS for the transportation services provided by RSA Industries LLC ("RSA") to Amazon. We are also contacting you with respect to approximately 180 unpaid invoices owed by Amazon to MHCFS for the transportation services provided by Jose Ramos dba M&J Logistics ("M&J"). The unpaid invoices total $72,422.64 with respect to RSA's services and $64,347.26 with respect to M&J. We have enclosed a statement on both accounts for your reference.

As you may know, MHCFS entered into a Factoring Services Agreements (the "Factoring Agreement") pursuant to which MHCFS purchased the above described invoices and RSA and M&J each assigned its right to collect on the invoices to MHCFS. Amazon was notified of RSA's assignment in writing on approximately April 30, 2019 and was also notified of M&J's assignment in writing on approximately May 21, 2019 (the "Notice of Assignments"). Enclosed with this letter are the respective Notice of Assignments. Amazon acknowledged the assignments and has paid MHCFS directly in the past on many RSA and M&J invoices. Yet the invoices at issue remain unpaid by Amazon.

It has come to our attention that RSA and M&J may have contacted Amazon in an attempt to circumvent MHCFS's rights to collect on the invoices under the Factoring Agreements. We also understand that one or both of RSA and M&J may have requested Amazon not comply with the Notice of Assignments and pay the outstanding invoices directly into the accounts of RSA and/or M&J.

MHCFS has not waived or released any of its rights to collect on the invoices , has not terminated, waived or released its rights and RSA and M&J obligations under the Factoring Agreements, and hereby is once again putting Amazon on notice of the assignments of the invoices and its obligation to pay the amounts directly to MHCFS. All Notices of Assignment concerning MHCFS are in full force and effect until you are notified otherwise in writing by



**SEIGFRIED BINGHAM**

Amazon Logistics, Inc.
Attn: Amanda Guereca & Monica Ruiz
July 29, 2019
Page 2

MHCFS. Any unauthorized attempt or request by RSA and/or M&J to have Amazon pay the invoices directly to RSA, M&J or any third party should be ignored and would be a breach of RSA and M&J's obligations under the Factoring Agreement. Furthermore, please understand that if Amazon ignores or does not comply with the Notice of Assignments, it will be liable to MHCFS for any amounts Amazon pays instead to RSA or M&J. Uniform Commercial Code § 9-406(a) requires you to pay MHCFS on receipt of a notice of assignment, and bars you from discharging any debt by paying the carrier instead.

Accordingly, MHCFS hereby requests that Amazon make payment in full of the invoices owed to MHCFS as Amazon has done in the past. Please contact the undersigned or Chaz Rumage at 816-242-6233 or Chaz.Rumage@MHC.com, to arrange for such payment. If you have any questions at all, or if anything in this communication is unclear to you in any way, please contact the undersigned at your earliest convenience. Thank you.

Sincerely,

Mark U. Opara
*Attorney for MHC Financial Services Inc.*

Enclosures
cc:     Chaz Rumage (via email only)

1483426v2

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

**Statement of Account As of July 25, 2019**

**Please Remit All Payments To:**

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc                                          RSA Industries LLC dba RSA Transportation
410 Terry Avenue N                                            29980 FM 2978 Road Apt 2206
Seattle, WA 98109                                             Magnolia, TX 77354
Attention: Book Keeper

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| AMZN-10 | 5/3/2019 | 11323QXYJ | 3,085.48 | 84 | 1,554.74 |
| AMZN-1CS9 | 5/28/2019 | 112G81CS9 | 602.31 | 59 | 602.31 |
| AMZN-1DZV | 5/21/2019 | 115BV1DZV | 485.36 | 66 | 485.36 |
| AMZN-21 | 5/6/2019 | 1126DMYRS | 2,583.25 | 81 | 2,583.25 |
| AMZN-22 | 5/6/2019 | 115R8N92J | 1,055.78 | 81 | 1,055.78 |
| AMZN-23 | 5/8/2019 | T-113XJHY2T | 693.11 | 79 | 693.11 |
| AMZN-29 | 5/8/2019 | 1132VJB1J | 396.13 | 79 | 396.13 |
| AMZN-2DL6 | 5/28/2019 | 113NF2DL6 | 797.04 | 59 | 797.04 |
| AMZN-2FJ7 | 5/28/2019 | 115VM2FJ7 | 735.28 | 59 | 735.28 |
| AMZN-2QJV | 5/28/2019 | 1156H2QJV | 2,350.75 | 59 | 2,350.75 |
| AMZN-2ZD1 | 5/23/2019 | 114JF2ZD1 | 993.37 | 64 | 993.37 |
| AMZN-35PY | 5/21/2019 | 1112335PY | 388.90 | 66 | 388.90 |
| AMZN-3BRB | 5/28/2019 | 113MP3BRB | 519.57 | 59 | 519.57 |
| AMZN-3DBK | 5/28/2019 | 115PK3DBK | 2,350.75 | 59 | 2,350.75 |
| AMZN-3GY7 | 5/28/2019 | 113BV3GY7 | 2,350.75 | 59 | 2,350.75 |
| AMZN-3X8Y | 5/28/2019 | 115RF3X8Y | 509.49 | 59 | 509.49 |
| AMZN-40 | 5/10/2019 | 113HW8DXQ | 2,681.54 | 77 | 2,681.54 |
| AMZN-48 | 5/13/2019 | T-114Q74JK4 | 801.39 | 74 | 801.39 |
| AMZN-4FM3 | 5/28/2019 | 113TK4FM3 | 768.41 | 59 | 768.41 |
| AMZN-52 | 5/13/2019 | T-1117MCPGC | 310.14 | 74 | 310.14 |
| AMZN-52YK | 5/28/2019 | 1165Y52YK | 733.40 | 59 | 733.40 |
| AMZN-54 | 5/13/2019 | T-112SBLZYN | 324.54 | 74 | 324.54 |
| AMZN-59 | 5/13/2019 | 1127MKWJL | 780.16 | 74 | 780.16 |
| AMZN-5BJF | 5/28/2019 | 116JK5BJF | 509.49 | 59 | 509.49 |
| AMZN-5WYF | 5/23/2019 | 1117Z5WYF | 555.48 | 64 | 555.48 |
| AMZN-60 | 5/13/2019 | 11291KNC6 | 800.74 | 74 | 800.74 |
| AMZN-61 | 5/16/2019 | T1129N427B | 1,424.20 | 71 | 1,424.20 |

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

**Statement of Account As of July 25, 2019**

**Please Remit All Payments To:**

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc                          RSA Industries LLC dba RSA Transportation
410 Terry Avenue N                            29980 FM 2978 Road Apt 2206
Seattle, WA 98109                             Magnolia, TX 77354
Attention: Book Keeper

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| | | | | | **Continued From Previous Page** |
| AMZN-62 | 5/16/2019 | T-116CZV7Q5 | 226.23 | 71 | 226.23 |
| AMZN-63 | 5/16/2019 | T-116GN69H7 | 459.89 | 71 | 459.89 |
| AMZN-63X3 | 5/21/2019 | 115PH63X3 | 3,632.24 | 66 | 3,632.24 |
| AMZN-64 | 5/16/2019 | T-111DBHX4G | 549.23 | 71 | 549.23 |
| AMZN-65 | 5/16/2019 | T-113B7M2B4 | 483.84 | 71 | 483.84 |
| AMZN-656R | 5/28/2019 | 116FD656R | 733.40 | 59 | 733.40 |
| AMZN-69 | 5/17/2019 | 113M8DFZ4 | 2,108.30 | 70 | 2,108.30 |
| AMZN-6JKQ | 5/23/2019 | 1116656JKQ | 1,076.52 | 64 | 1,076.52 |
| AMZN-6KQ7 | 5/23/2019 | 111MY6KQ7 | 993.37 | 64 | 993.37 |
| AMZN-70 | 5/17/2019 | 112KJ8DW9 | 2,108.30 | 70 | 1,310.26 |
| AMZN-72 | 5/17/2019 | T-114RVFFK8 | 1,160.22 | 70 | 1,160.22 |
| AMZN-77F3 | 5/28/2019 | 1169H77F3 | 516.85 | 59 | 516.85 |
| AMZN-79 | 5/20/2019 | T-111D4MWLB | 787.31 | 67 | 787.31 |
| AMZN-79MG | 5/28/2019 | 116SD79MG | 735.27 | 59 | 735.27 |
| AMZN-7NPF | 5/23/2019 | T-113VC7NPF | 565.38 | 64 | 565.38 |
| AMZN-7QQB | 5/21/2019 | 115BC7QQB | 265.68 | 66 | 265.68 |
| AMZN-84 | 5/20/2019 | 113V6R8S5 | 600.87 | 67 | 600.87 |
| AMZN-85 | 5/20/2019 | 111G21CJF | 636.73 | 67 | 636.73 |
| AMZN-86 | 5/20/2019 | T-112Z9M6ZB | 536.08 | 67 | 536.08 |
| AMZN-8RWR | 5/23/2019 | 1144X8RWR | 509.49 | 64 | 509.49 |
| AMZN-9F59 | 5/28/2019 | 115XT9F59 | 525.25 | 59 | 525.25 |
| AMZN-BTR1 | 5/23/2019 | T-113ZTBTR1 | 558.89 | 64 | 558.89 |
| AMZN-BX41 | 5/28/2019 | 1152XBX41 | 558.31 | 59 | 558.31 |
| AMZN-C5P1 | 5/23/2019 | T-111V4C5P1 | 717.29 | 64 | 717.29 |
| AMZN-CGYF | 5/28/2019 | 112PCCGYF | 519.57 | 59 | 519.57 |

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

**Statement of Account As of July 25, 2019**

**Please Remit All Payments To:**

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc                          RSA Industries LLC dba RSA Transportation
410 Terry Avenue N                            29980 FM 2978 Road Apt 2206
Seattle, WA 98109                             Magnolia, TX 77354
Attention: Book Keeper

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| | | | | | Continued From Previous Page |
| AMZN-CWWM | 5/23/2019 | 111XXCWWM | 993.37 | 64 | 993.37 |
| AMZN-D2L5 | 5/28/2019 | 115QFD2L5 | 1,542.22 | 59 | 1,542.22 |
| AMZN-D5HX | 5/23/2019 | 116TSD5HX | 999.52 | 64 | 999.52 |
| AMZN-DMLH | 5/21/2019 | 112Z7DMLH | 714.18 | 66 | 714.18 |
| AMZN-DPJV | 5/28/2019 | 1168MDPJV | 1,542.22 | 59 | 1,542.22 |
| AMZN-HCHH | 5/28/2019 | 1134YHCHH | 797.04 | 59 | 797.04 |
| AMZN-J5L7 | 5/28/2019 | 113Y2J5L7 | 1,542.22 | 59 | 1,542.22 |
| AMZN-JN7Q | 5/28/2019 | 1158VJN7Q | 509.49 | 59 | 509.49 |
| AMZN-JXBS | 5/28/2019 | 113B8JXBS | 519.57 | 59 | 519.57 |
| AMZN-K2HZ | 5/28/2019 | 116F5K2HZ | 1,542.22 | 59 | 1,542.22 |
| AMZN-KTF2 | 5/28/2019 | 116MGKTF2 | 797.04 | 59 | 797.04 |
| AMZN-MVSJ | 5/23/2019 | 115HNMVSJ | 509.49 | 64 | 509.49 |
| AMZN-N66F | 5/23/2019 | 1141CN66F | 555.48 | 64 | 555.48 |
| AMZN-NP7K | 5/28/2019 | 111ZXNP7K | 563.15 | 59 | 563.15 |
| AMZN-PC4T | 5/28/2019 | 112DBPC4T | 1,895.10 | 59 | 1,895.10 |
| AMZN-RFBZ | 5/23/2019 | T-11294RFBZ | 559.02 | 64 | 559.02 |
| AMZN-RPKG | 5/23/2019 | 1166BRPKG | 625.47 | 64 | 625.47 |
| AMZN-S23V | 5/28/2019 | 1127PS23V | 851.88 | 59 | 851.88 |
| AMZN-S87F | 5/23/2019 | 1147CS87F | 1,076.52 | 64 | 1,076.52 |
| AMZN-TL27 | 5/28/2019 | 115ZJTL27 | 1,895.10 | 59 | 1,895.10 |
| AMZN-WZ4V | 5/21/2019 | 113V8WZ4V | 485.36 | 66 | 485.36 |
| AMZN-XF98 | 5/28/2019 | 1165TXF98 | 1,542.22 | 59 | 1,542.22 |
| AMZN-XZ3X | 5/28/2019 | 1122HXZ3X | 1,542.22 | 59 | 1,542.22 |

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm* 78,422.64

**Total Due**

**Statement of Account As of July 25, 2019**

**Please Remit All Payments To:**

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc
410 Terry Avenue N
Seattle, WA 98109
Attention: Book Keeper

RSA Industries LLC dba RSA Transportation
29980 FM 2978 Road Apt 2206
Magnolia, TX 77354

| Invoice# | Date | PO#.. | Amount | Age | Balance |
| --- | --- | --- | --- | --- | --- |

***PLEASE INCLUDE LOAD NUMBER WITH REPLY***

In order for us to better assist you, please direct all questions to: funding.mhcfs@mhc.com or (844)891-3509

**Statement of Account As of July 25, 2019**

**Please Remit All Payments To:**

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc
410 Terry Avenue N
Seattle, WA 98109
Attention: Book Keeper

Jose Ramos dba M&J Logistics
302 Ave C
Richmond, TX 77406

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| AMZN-1HT5 | 6/27/2019 | 116CF1HT5 | 845.57 | 29 | 845.57 |
| AMZN-32KF | 6/28/2019 | 111NM32KF | 682.10 | 28 | 682.10 |
| AMZN-3C2N | 6/28/2019 | 1147G3C2N | 2,588.64 | 28 | 2,588.64 |
| AMZN-3T8Y | 6/28/2019 | 116PG3T8Y | 2,892.03 | 28 | 2,892.03 |
| AMZN-4KXX | 6/27/2019 | 1H5V4KXX | 845.57 | 29 | 845.57 |
| AMZN-59HZ | 6/27/2019 | 115ZK59HZ | 1,409.02 | 29 | 1,409.02 |
| AMZN-5CH9 | 6/28/2019 | 115NT5CH9 | 2,644.56 | 28 | 2,644.56 |
| AMZN-5WBF | 6/27/2019 | 113MY5WBF | 845.57 | 29 | 845.57 |
| AMZN-665F | 7/1/2019 | 112PN665F | 1,278.82 | 25 | 1,278.82 |
| AMZN-69VZ | 6/27/2019 | 111j369vz | 845.57 | 29 | 845.57 |
| AMZN-7D4D | 7/1/2019 | 114587D4D | 965.12 | 25 | 965.12 |
| AMZN-7KHQ | 6/27/2019 | 114K77KHQ | 957.91 | 29 | 957.91 |
| AMZN-CJMN | 6/28/2019 | 11156CJMN | 2,892.03 | 28 | 2,892.03 |
| AMZN-CJMW | 7/1/2019 | 114CKCJMW | 901.57 | 25 | 901.57 |
| AMZN-F1M8 | 6/28/2019 | 114QPF1M8 | 874.16 | 28 | 874.16 |
| amzn-gx1h | 6/28/2019 | 116GBGX1H | 2,892.03 | 28 | 2,892.03 |
| amzn-hdks | 6/28/2019 | 113VKHDKS | 2,892.03 | 28 | 2,892.03 |
| amzn-htzp | 7/1/2019 | 114QQHTZP | 1,278.82 | 25 | 1,278.82 |
| amzn-jmgw | 6/27/2019 | 112BDJMGW | 1,409.02 | 29 | 1,409.02 |
| AMZN-M584 | 6/28/2019 | 11427M584 | 2,588.64 | 28 | 2,588.64 |
| AMZN-MBR3 | 7/1/2019 | 116F7MBR3 | 669.12 | 25 | 669.12 |
| amzn-mwpp | 6/28/2019 | 115TIMWPP | 2,561.55 | 28 | 2,561.55 |
| AMZN-NGT9 | 6/27/2019 | 1156LNGT9 | 5,102.78 | 29 | 5,102.78 |
| AMZN-Q28Y | 6/28/2019 | 11411Q28Y | 2,421.07 | 28 | 2,421.07 |
| amzn-qbdi | 7/1/2019 | 1157QQBD1 | 892.71 | 25 | 892.71 |
| AMZN-QC2K | 7/1/2019 | 115BKQC2K | 707.77 | 25 | 707.77 |
| amzn-qhwv | 7/1/2019 | 112F3QHWV | 871.98 | 25 | 871.98 |

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

**Statement of Account As of July 25, 2019**

**Please Remit All Payments To:**

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc                              Jose Ramos dba M&J Logistics
410 Terry Avenue N                               302 Ave C
Seattle, WA 98109                                Richmond, TX 77406
Attention: Book Keeper

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| | | | | | **Continued From Previous Page** |
| amzn-stbd | 6/27/2019 | 1133JSTBD | 2,993.21 | 29 | 2,993.21 |
| AMZN-T23K | 6/27/2019 | 114T2T23K | 845.57 | 29 | 845.57 |
| amzn-tybi | 7/1/2019 | 112GMTYBI | 1,278.82 | 25 | 1,278.82 |
| AMZN-VKZ4 | 7/1/2019 | 116N9VKZ4 | 624.71 | 25 | 624.71 |
| AMZN-VR9F | 6/27/2019 | 1135HVR9F | 957.91 | 29 | 957.91 |
| AMZN-VSJ1 | 6/28/2019 | 113KSVSJ1 | 2,993.21 | 28 | 2,993.21 |
| AMZN-WH3R | 6/27/2019 | 115KFWH3R | 2,106.53 | 29 | 2,106.53 |
| AMZN-WLG5 | 6/27/2019 | 112QZWLG5 | 845.57 | 29 | 845.57 |
| amzn-xcrd | 6/27/2019 | 112SVXCRD | 743.35 | 29 | 743.35 |
| amzn-xfrx | 6/27/2019 | 114M8XFRX | 1,409.02 | 29 | 1,409.02 |
| AMZN-Y5RX | 6/27/2019 | 1142NY5RX | 2,892.03 | 29 | 2,892.03 |
| AMZN-Z5XP | 7/1/2019 | 113LWZ5XP | 901.57 | 25 | 901.57 |
| | **Total Due** | | | | **64,347.26** |

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

**\*\*\*PLEASE INCLUDE LOAD NUMBER WITH REPLY\*\*\***

**In order for us to better assist you, please direct all questions to: funding.mhcfs@mhc.com or (844)891-3509**

## EXHIBIT C

## <u>NOTICE OF ASSIGNMENT</u>

TO:[                                         ]

ATTN: **ACCOUNTS PAYABLE MANAGER**            E-MAIL:

REGARDING: RSA Industries

MC#: DOT 3221611                    DATE: 4/24/2019

The purpose of this Notice of Assignment is to inform you that the above-named carrier has assigned all of its current and future accounts receivable and the proceeds thereof to Purchaser.  Accordingly, Purchaser now owns ALL of above-named carrier's accounts receivable and has the sole and exclusive right to collect and retain the same.  The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. You may have received, or will be receiving, invoices for services rendered by this carrier.  **Please be advised that ALL such invoices (past, present, and future) must be paid directly to Purchaser as indicated below:**

**Payments by mail:**                    **Electronic Payments:**

  Murphy Hoffman Company    Account:  987 222 4221
  P.O. Box 874091      Routing: 101 000 695
  Kansas City, MO 64187    Reference: DOT 3221611
            *Please submit supporting documents*
            *via email to:*
              Email: ACH.payments@mhc.com

Your compliance with this assignment is authorized and directed by the above-named carrier, as evidenced by the duly authorized signature of the carrier below.  This assignment can only be revoked in writing signed by both Purchaser and the above-named carrier.  In the event there is any claim or dispute that may affect payment of any invoice, or if any person or entity other than Purchaser attempts to collect or claims any right to any such invoices/accounts receivable, then please notify Purchaser immediately, and do <u>not</u> make any payment on such accounts to any other party (including the above-named carrier).  **<u>Payment to the carrier or any other party will not discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.</u>**

Your cooperation with this Notice of Assignment and timely payment of all such invoices as directed will be greatly appreciated, and will help to avoid duplicate payments and/or legal action.  Although all funds and payments will be redirected to Purchaser, please continue to send all 1099's directly to the carrier. Please make the proper notations on your ledger. Lastly, by sending payment to Purchaser you acknowledge invoices are not subject to any claims or defenses or right to offset you may have against the carrier. Thank you.

***<u>IF YOU HAVE QUESTIONS OR WOULD LIKE ADDITIONAL INFORMATION PLEASE CONTACT US AT 844-891-3509.</u>***

**Purchaser**                    The foregoing is authorized and directed
**MHC Financial Services, Inc.**            by the above-named carrier:

*Joe Moran*                    By _____
                        Name Rene Carbonell
                        Title Owner _____

                        By _____
                        Name _____
                        Title _____

Contract Number: 00000204            *Clerk of the District Court, Johnson County Kansas*
1138778v5                    *10/10/19  04:01pm HS*

DocuSign Envelope ID: 682611F8-9012-46B0-8E71-0B90508F12EA

**EXHIBIT C**

## NOTICE OF ASSIGNMENT

TO:[                                                                ]

ATTN: **ACCOUNTS PAYABLE MANAGER**                    E-MAIL:

REGARDING: Jose Ramos DBA M&J Logistics

MC#: 3234205                                                        DATE: 5/8/2019

The purpose of this Notice of Assignment is to inform you that the above-named carrier has assigned all of its current and future accounts receivable and the proceeds thereof to Purchaser.  Accordingly, Purchaser now owns ALL of above-named carrier's accounts receivable and has the sole and exclusive right to collect and retain the same.  The amount due or to become due under each such account has been assigned and payment is to be made to Purchaser. You may have received, or will be receiving, invoices for services rendered by this carrier.  **Please be advised that ALL such invoices (past, present, and future) must be paid directly to Purchaser as indicated below:**

| **Payments by mail:** | **Electronic Payments:** |
|---|---|
| | Account:  987 222 4221 |
| Murphy Hoffman Company | Routing:  101 000 695 |
| P.O. Box 874091 | Reference: 3234205 |
| Kansas City, MO 64187 | *Please submit supporting documents* |
| | *via email to:* |
| | Email: ACH.payments@mhc.com |

Your compliance with this assignment is authorized and directed by the above-named carrier, as evidenced by the duly authorized signature of the carrier below.  This assignment can only be revoked in writing signed by both Purchaser and the above-named carrier.  In the event there is any claim or dispute that may affect payment of any invoice, or if any person or entity other than Purchaser attempts to collect or claims any right to any such invoices/accounts receivable, then please notify Purchaser immediately, and do not make any payment on such accounts to any other party (including the above-named carrier).  **Payment to the carrier or any other party will not discharge or relieve you of your obligation to pay Purchaser following your receipt of this notice.**

Your cooperation with this Notice of Assignment and timely payment of all such invoices as directed will be greatly appreciated, and will help to avoid duplicate payments and/or legal action.  Although all funds and payments will be redirected to Purchaser, please continue to send all 1099's directly to the carrier. Please make the proper notations on your ledger. Lastly, by sending payment to Purchaser you acknowledge invoices are not subject to any claims or defenses or right to offset you may have against the carrier. Thank you.

***IF YOU HAVE QUESTIONS OR WOULD LIKE ADDITIONAL INFORMATION PLEASE CONTACT US AT 844-891-3509.***

| | The foregoing is authorized and directed |
| | by the above-named carrier: |
| **Purchaser** | |
| **MHC Financial Services, Inc.** | |
| | By _____ |
| *Joe Moran* | Name Jose Ramos |
| | Title Owner |
| | |
| | By _____ |
| | Name _____ |
| | Title _____ |

9

Contract Number: 00000219
1138778v5

**Statement of Account As of October  7, 2019**

Please Remit All Payments To:

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187



Invoices Were Purchased From:

Amazon Logistics Inc
410 Terry Avenue N
Seattle, WA 98109
Attention: Book Keeper

RSA Industries LLC dba RSA Transportation
29980 FM 2978 Road Apt 2206
Magnolia, TX 77354

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| AMZN-1CS9 | 5/28/2019 | 112G81CS9 | 602.31 | 133 | 602.31 |
| AMZN-1DZV | 5/21/2019 | 115BV1DZV | 485.36 | 140 | 485.36 |
| AMZN-2DL6 | 5/28/2019 | 113NF2DL6 | 797.04 | 133 | 797.04 |
| AMZN-2FJ7 | 5/28/2019 | 115VM2FJ7 | 735.28 | 133 | 735.28 |
| AMZN-2QJV | 5/28/2019 | 1156H2QJV | 2,350.75 | 133 | 2,350.75 |
| AMZN-2ZD1 | 5/23/2019 | 114JF2ZD1 | 993.37 | 138 | 993.37 |
| AMZN-35PY | 5/21/2019 | 1112335PY | 388.90 | 140 | 388.90 |
| AMZN-3BRB | 5/28/2019 | 113MP3BRB | 519.57 | 133 | 519.57 |
| AMZN-3DBK | 5/28/2019 | 115PK3DBK | 2,350.75 | 133 | 2,350.75 |
| AMZN-3GY7 | 5/28/2019 | 113BV3GY7 | 2,350.75 | 133 | 2,350.75 |
| AMZN-3X8Y | 5/28/2019 | 115RF3X8Y | 509.49 | 133 | 509.49 |
| AMZN-40 | 5/10/2019 | 113HW8DXQ | 2,681.54 | 151 | 2,681.54 |
| AMZN-48 | 5/13/2019 | T-114Q74JK4 | 801.39 | 148 | 801.39 |
| AMZN-4FM3 | 5/28/2019 | 113TK4FM3 | 768.41 | 133 | 768.41 |
| AMZN-52 | 5/13/2019 | T-1117MCPGC | 310.14 | 148 | 310.14 |
| AMZN-52YK | 5/28/2019 | 1165Y52YK | 733.40 | 133 | 733.40 |
| AMZN-54 | 5/13/2019 | T-112SBLZYN | 324.54 | 148 | 324.54 |
| AMZN-59 | 5/13/2019 | 1127MKWJL | 780.16 | 148 | 780.16 |
| AMZN-5BJF | 5/28/2019 | 116JK5BJF | 509.49 | 133 | 509.49 |
| AMZN-5WYF | 5/23/2019 | 1117Z5WYF | 555.48 | 138 | 555.48 |
| AMZN-60 | 5/13/2019 | 11291KNC6 | 800.74 | 148 | 800.74 |
| AMZN-61 | 5/16/2019 | T1129N427B | 1,424.20 | 145 | 1,424.20 |
| AMZN-62 | 5/16/2019 | T-116CZV7Q5 | 226.23 | 145 | 226.23 |
| AMZN-63 | 5/16/2019 | T-116GN69H7 | 459.89 | 145 | 459.89 |
| AMZN-63X3 | 5/21/2019 | 115PH63X3 | 3,632.24 | 140 | 3,632.24 |
| AMZN-64 | 5/16/2019 | T-111DBHX4G | 549.23 | 145 | 549.23 |
| AMZN-65 | 5/16/2019 | T-113B7M2B4 | 483.84 | 145 | 483.84 |

*Clerk of the District Court, Johnson County Kansas*
*10/10/19  04:01pm HS*

**Statement of Account As of October 7, 2019**

Please Remit All Payments To:

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc
410 Terry Avenue N
Seattle, WA 98109
Attention: Book Keeper

RSA Industries LLC dba RSA Transportation
29980 FM 2978 Road Apt 2206
Magnolia, TX 77354

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| | | | | | **Continued From Previous Page** |
| AMZN-656R | 5/28/2019 | 116FD656R | 733.40 | 133 | 733.40 |
| AMZN-69 | 5/17/2019 | 113M8DFZ4 | 2,108.30 | 144 | 2,108.30 |
| AMZN-6JKQ | 5/23/2019 | 1116656JKQ | 1,076.52 | 138 | 1,076.52 |
| AMZN-6KQ7 | 5/23/2019 | 111MY6KQ7 | 993.37 | 138 | 993.37 |
| AMZN-70 | 5/17/2019 | 112KJ8DW9 | 2,108.30 | 144 | 766.37 |
| AMZN-72 | 5/17/2019 | T-114RVFFK8 | 1,160.22 | 144 | 1,160.22 |
| AMZN-77F3 | 5/28/2019 | 1169H77F3 | 516.85 | 133 | 516.85 |
| AMZN-79 | 5/20/2019 | T-111D4MWLB | 787.31 | 141 | 787.31 |
| AMZN-79MG | 5/28/2019 | 116SD79MG | 735.27 | 133 | 735.27 |
| AMZN-7NPF | 5/23/2019 | T-113VC7NPF | 565.38 | 138 | 565.38 |
| AMZN-7QQB | 5/21/2019 | 115BC7QQB | 265.68 | 140 | 265.68 |
| AMZN-84 | 5/20/2019 | 113V6R8S5 | 600.87 | 141 | 600.87 |
| AMZN-85 | 5/20/2019 | 111G21CJF | 636.73 | 141 | 636.73 |
| AMZN-86 | 5/20/2019 | T-112Z9M6ZB | 536.08 | 141 | 536.08 |
| AMZN-8RWR | 5/23/2019 | 1144X8RWR | 509.49 | 138 | 509.49 |
| AMZN-9F59 | 5/28/2019 | 115XT9F59 | 525.25 | 133 | 525.25 |
| AMZN-BTR1 | 5/23/2019 | T-113ZTBTR1 | 558.89 | 138 | 558.89 |
| AMZN-BX41 | 5/28/2019 | 1152XBX41 | 558.31 | 133 | 558.31 |
| AMZN-C5P1 | 5/23/2019 | T-111V4C5P1 | 717.29 | 138 | 717.29 |
| AMZN-CGYF | 5/28/2019 | 112PCCGYF | 519.57 | 133 | 519.57 |
| AMZN-CWWM | 5/23/2019 | 111XXCWWM | 993.37 | 138 | 993.37 |
| AMZN-D2L5 | 5/28/2019 | 115QFD2L5 | 1,542.22 | 133 | 1,542.22 |
| AMZN-D5HX | 5/23/2019 | 116TSD5HX | 999.52 | 138 | 999.52 |
| AMZN-DMLH | 5/21/2019 | 112Z7DMLH | 714.18 | 140 | 714.18 |
| AMZN-DPJV | 5/28/2019 | 1168MDPJV | 1,542.22 | 133 | 1,542.22 |

**Statement of Account As of October  7, 2019**

**Please Remit All Payments To:**

MHC Financial Services, Inc.
P.O. Box 874091
Kansas City, MO 64187

Invoices Were Purchased From:

Amazon Logistics Inc                          RSA Industries LLC dba RSA Transportation
410 Terry Avenue N                            29980 FM 2978 Road Apt 2206
Seattle, WA 98109                             Magnolia, TX 77354
Attention: Book Keeper

| Invoice# | Date | PO#.. | Amount | Age | Balance |
|---|---|---|---|---|---|
| | | | | | **Continued From Previous Page** |
| AMZN-HCHH | 5/28/2019 | 1134YHCHH | 797.04 | 133 | 797.04 |
| AMZN-J5L7 | 5/28/2019 | 113Y2J5L7 | 1,542.22 | 133 | 1,542.22 |
| AMZN-JN7Q | 5/28/2019 | 1158VJN7Q | 509.49 | 133 | 509.49 |
| AMZN-JXBS | 5/28/2019 | 113B8JXBS | 519.57 | 133 | 519.57 |
| AMZN-K2HZ | 5/28/2019 | 116F5K2HZ | 1,542.22 | 133 | 1,542.22 |
| AMZN-KTF2 | 5/28/2019 | 116MGKTF2 | 797.04 | 133 | 797.04 |
| AMZN-MVSJ | 5/23/2019 | 115HNMVSJ | 509.49 | 138 | 509.49 |
| AMZN-N66F | 5/23/2019 | 1141CN66F | 555.48 | 138 | 555.48 |
| AMZN-NP7K | 5/28/2019 | 111ZXNP7K | 563.15 | 133 | 563.15 |
| AMZN-PC4T | 5/28/2019 | 112DBPC4T | 1,895.10 | 133 | 1,895.10 |
| AMZN-RFBZ | 5/23/2019 | T-11294RFBZ | 559.02 | 138 | 559.02 |
| AMZN-RPKG | 5/23/2019 | 1166BRPKG | 625.47 | 138 | 625.47 |
| AMZN-S23V | 5/28/2019 | 1127PS23V | 851.88 | 133 | 851.88 |
| AMZN-S87F | 5/23/2019 | 1147CS87F | 1,076.52 | 138 | 1,076.52 |
| AMZN-TL27 | 5/28/2019 | 115ZJTL27 | 1,895.10 | 133 | 1,895.10 |
| AMZN-WZ4V | 5/21/2019 | 113V8WZ4V | 485.36 | 140 | 485.36 |
| AMZN-XF98 | 5/28/2019 | 1165TXF98 | 1,542.22 | 133 | 1,542.22 |
| AMZN-XZ3X | 5/28/2019 | 1122HXZ3X | 1,542.22 | 133 | 1,542.22 |

**Total Due**                                                                                          **65,595.74**

***PLEASE INCLUDE LOAD NUMBER WITH REPLY***
In order for us to better assist you, please direct all questions to: funding.mhcfs@mhc.com or (844)891-3509